# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS LONDON, EACH SEVERALLY SUBSCRIBING TO INSURANCE POLICIES EACH FOR HIS OWN PART AND NOT ONE FOR THE OTHER NUMBERED AE2141B AND VS5057L, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> GREAT SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA a/k/a LIBYA, *et al.* <br><br> Defendants. | Case No. 1:06-cv-00731-GK |

## DEFENDANTS' MOTION TO DISMISS

Defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'ammar al-Qadhafi, Abdallah al-Sanusi, and Ibrahaim al-Bishari (the "Libya Defendants")[1], by undersigned counsel, move this Court pursuant to Rule 12 (b)(1), (5) and (6) of the Federal Rules of Civil Procedure to dismiss this action against the Libya Defendants as set forth below.

The Amended Complaint should be dismissed pursuant to Rule 12(b)(1) because the Libya Defendants are immune from suit under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1601 *et seq.* The FSIA provides the sole basis for jurisdiction over a foreign sovereign. Here, all of the Libya Defendants are immune from suit under the FSIA and the allegations of the Amended Complaint do not fall within any of the exceptions to immunity.

---

[1] Undersigned counsel does not represent defendants, Syrian Arab Republic, Syrian Air Force Intelligence or Muhammed Al Khuli (the "Syria Defendants"). Entries of Default were entered by the Clerk of the Court against the Syria Defendants on October 4, 2006. This Motion is filed on behalf of the Libya Defendants only.

The Amended Complaint should also be dismissed pursuant to Rule 12(b)(6) because: (1) the plaintiffs' claims are barred by the applicable statutes of limitations; (2) the plaintiffs' Anti-Terrorist Act ("ATA"), 18 U.S.C. § 2333, claim fails as a matter of law because the plaintiffs do not have standing and the statute bars the claim; (3) the plaintiffs failed to allege a claim pursuant to the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350; and (4) the Amended Complaint fails to state a claim against defendants Abdallah al-Sanusi, and Ibrahaim al-Bishari.

The Libya Defendants further move this Court pursuant to Rule 12 (b)(5) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint on the ground of improper service of process.

In further support of this Motion, the Libya Defendants respectfully refer this Court to the attached Memorandum of Points and Authorities and Proposed Order.

Respectfully, Submitted,

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**

By:            /s/ *Thomas J. Whalen*

Thomas J. Whalen, Esq. (Bar No. 208512)

           /s/ *Mark A. Johnston*

Mark A. Johnston, Esq. (Bar No. 455764)
1747 Pennsylvania Ave., N.W.,
Twelfth Floor
Washington, D.C. 20006
(202) 659-6600

Wendy West Feinstein, Esq. (Pa ID No. 86698)
(*Admitted Pro Hac Vice*)
600 Grant Street
44th Floor
Pittsburgh, PA  15219
(412) 566-6000

Dated:  December 5, 2006

Counsel for Defendants, Great Socialist People's
 Libyan Arab Jamahiriya, Libyan Internal
 Security, Libyan External Security, Mu'Ammar
 Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim
 Al-Bishari

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Motion to Dismiss**, **Memorandum of Points and Authorities and Proposed Order** was electronically filed and served this 5th day of December, 2006, upon the following:

Richard D. Heideman
Tracy Reichman Kalik
Heideman Nudelman & Kalik, P.C.
1146 19th Street, NW
5th Floor
Washington, DC 20036

_____/s/ *Mark A. Johnston*_____
Mark A. Johnston

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CERTAIN UNDERWRITERS AT ) | |
| LLOYDS LONDON, EACH SEVERALLY ) | |
| SUBSCRIBING TO INSURANCE ) | Case No. 1:06-cv-00731-GK |
| POLICIES EACH FOR HIS OWN PART ) | |
| AND NOT ONE FOR THE OTHER ) | |
| NUMBERED AE2141B AND VS5057L, ) | |
| *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| GREAT SOCIALIST PEOPLE'S LIBYAN ) | |
| ARAB JAMAHIRIYA a/k/a LIBYA, *et al.* ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, Great Socialist People's Libyan Arab Jamahiriya a/k/a LIBYA ("Libya"),

Libyan Internal Security a/k/a al-'Amn al-Dhakhili ("LISO"), Libyan External Security a/k/a

al-'Amn al-Khariji ("LESO"), Mu'ammar al-Qadhafi (sometimes referred to as "Qadhafi" or

"Colonel Qadhafi"), Major Abdallah al-Sanusi, and Ibrahaim al-Bishari (collectively sometimes

referred to as the "Libya Defendants"),[2] through the undersigned counsel, respectfully submit

this Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the

Amended Complaint.

---

[2] Undersigned counsel does not represent defendants Syrian Arab Republic, Syrian Air Force Intelligence or General Muhammad Al-Khili (the "Syria Defendants"). Default was entered by the Clerk of Court against the Syria Defendants on October 4, 2006. This Motion is filed on behalf of the Libya Defendants only.

## I.    INTRODUCTION

The Amended Complaint seeks recovery for property damage that occurred over 20 years ago and should be dismissed for a multitude of reasons, the most important of which are:  (1) that the Libya Defendants are immune from suit; and (2) the claims arising from property damage that occurred over 20 years ago are time-barred.

### A.    Factual Allegations.

For purposes of this Motion to Dismiss only, the Libya Defendants state the following "facts" as alleged by the plaintiffs and include reasonable inferences from the alleged facts.

Plaintiffs allege that they severally and collectively provided insurance that covered the hull of the aircraft owned by EgyptAir through policies AE2141B and VS5057L (collectively the "Policies").  (Am. Complaint, p. 5, ¶ 6).  There are no allegations about the citizenship of any of the plaintiffs or of EgyptAir, the insured owner of the aircraft.  The case caption includes addresses for the insurers, all but one of which are in Europe.  (*See*, Am. Complaint caption).

The aircraft was a Boeing 747 and was flown as EgyptAir Flight 648 on November 23, 1985.  (Am. Complaint, ¶¶ 6, 28).  Although not expressly alleged, one can infer from the allegations that the insurance policies were in effect in November 1985.  (*See, generally,* Am. Complaint).

EgyptAir Flight 648, en route from Athens, Greece to Cairo, Egypt, was hijacked on November 23, 1985 by members of the Abu Nidal Organization ("ANO").  (Am. Complaint, ¶¶ 29, 33).  The ANO hijackers were allegedly supported by Libya and Syria.  (Am. Complaint, ¶¶ 17, 18, 20, 25).  Prior to landing, the aircraft was damaged during a shoot-out between the hijackers and an Egyptian air marshal.  (Am. Complaint ¶ 3).  The plane landed at Malta's International Airport because it was running out of fuel.  (Am. Complaint, ¶¶ 32, 33).  Though

not related to their property damage claim, the plaintiffs state that the terrorists shot five passengers and threw them out of the aircraft.  (Am. Complaint, ¶¶ 39, 40).

The remaining damage to the plane occurred when Egyptian commandoes stormed the plane and sought entry by attacking the passenger doors and luggage doors with explosives. (Am. Complaint, ¶¶ 41, 42).  The explosives caused the plane to catch fire.  (Am. Complaint, ¶ 43).  When the commandoes stormed the plane, the hijackers lobbed hand grenades into the passenger area, also igniting a fire on the aircraft.  (Am. Complaint, ¶ 44).

The aircraft was damaged beyond repair and the plaintiffs paid the owner of the aircraft under the Policies for the hull loss.  (Am. Complaint, ¶¶ 45, 50).  One of the hijackers, Omar Rezaq, was arrested, tried and convicted in 1986 in Malta and later tried and convicted in the United States.

**B.**      **Summary of Claims.**

Now, over 20 years after the damage to the aircraft and the first trial of Mr. Rezaq, the insurers and underwriters who paid their insurance obligations to EgyptAir, have brought suit against the Libya Defendants asserting that this Court has subject matter and personal jurisdiction over the Libya Defendants pursuant to the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602-1611, specifically 28 U.S.C. § 1605(a)(1); and Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350 and the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, *et seq*.  (Am. Complaint, ¶ 1).

Plaintiffs' claims are solely ***property damage claims***, not claims of personal injury and death to citizens of the United States.  The plaintiffs seek recovery under common law theories of conversion, trespass and air piracy (which claim refers to the criminal Aircraft Piracy Act, 49 U.S.C. §§ 46501, 46502), and statutory recovery under the ATA.

3

The FSIA is the *only* legal basis for a plaintiff to obtain jurisdiction over a foreign state in federal court. *See Hwang Geum Joo v. Japan*, 332 F.3d 679, 682 (D.C. Cir. 2003), *reaff'd*, 413 F.3d 45 (D.C. Cir. 2005). It generally grants immunity to foreign sovereigns and officials subject only to the exceptions set forth in the Act. 28 U.S.C. § 1605; *see Hwang Geum Joo*, 332 F.3d at 682; *Doe v. Israel*, 400 F. Supp. 2d 86 (D.D.C. 2004). As shown in this memorandum, the plaintiffs cannot establish that any exception to immunity applies to the Libya Defendants. Consequently, all of the Libya Defendants are immune from suit.

The ATCA is a simply-worded statute that reads, in its entirety, "the district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. It is a jurisdictional statute only and does not create a cause of action. *See Sosa v. Humberto Alvarez-Machain*, 542 U.S. 692, 724-725 (2004). In addition to the Libya Defendants' immunity, the plaintiffs' claims brought pursuant to the ATCA, including their alleged common law claims, are all time-barred.

The ATA provides civil remedies for "any national of the United States injured in his or her person, property or business by reason of an act of international terrorism . . . ." 18 U.S.C. § 2333. The Libya Defendants are immune from suit under the ATA, the ATA claim is time-barred and the plaintiffs do not have standing to sue under this provision because they are not nationals of the United States.

## II.   ARGUMENT

### A.   Summary of Argument.

The plaintiffs cannot allege facts that support their conclusion that the Libya Defendants implicitly waived immunity under § 1605(a)(1) of the FSIA. They claim *no other basis* for subject matter jurisdiction over the sovereign defendants. The plaintiffs' suggestion that the

Libya Defendants impliedly waived immunity is not supported by the facts or the law. The controlling law in this Circuit rejects their position. Consequently, the case must be dismissed for lack of subject matter jurisdiction.

Even if the Court determines it has subject matter jurisdiction, which the Libya Defendants respectfully suggest it does not, the Amended Complaint should be dismissed on other grounds. The statute of limitations is also fatal to all of the plaintiffs' claims. Each of the plaintiffs' 20-year-old property damage claims are time-barred regardless of whether the Court applies a ten-year statute of limitations or a four-year statute of limitations. Moreover, the plaintiffs do not have standing to bring claims under the ATA because they (and their insured) are not United States nationals, and even if the plaintiffs had standing, their claim is barred by the governing statute, 18 U.S.C. § 2337(2).

In addition, the claims against Ibrahaim al-Bishari, Abdallah al-Sanusi, LESO and LISO must be dismissed because defendant Abdallah al-Sanusi did not hold a position with LISO or LESO during the relevant period and because Ibrahaim al-Bishari died. Moreover, LESO and LISO, as unincorporated departments under the FSIA, cannot be sued separately.

Finally, plaintiffs have not established that they have made effective service on the Libya Defendants.

**B.    <u>Legal Standard.</u>**

As summarized above, the Libya Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(1), (5) and (6).

On a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain her claims. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); *Pitney*

*Bowes, Inc. v. United States Postal Serv*., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  While the Court

must accept as true the factual allegations contained in the complaint, on the issue of jurisdiction,

the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a

12(b)(1) motion than in resolving a 12(b)(6) motion."  *Grand Lodge of Fraternal Order of*

*Police*, 185 F. Supp. 2d at 13-14 (citation and internal quotation marks omitted).  This scrutiny

permits the Court to consider material outside of the pleadings in its effort to determine whether

the Court has jurisdiction.  *See Herbert v. National Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir.

1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

     A complaint should also be dismissed for ineffective service of process pursuant to

Rule 12(b)(5) if the plaintiff fails to establish that he or she has properly effected service

pursuant to Rule 4 of the Federal Rules of Civil Procedure or under the service rules of the FSIA.

*Lindsey v. United States*, 448 F. Supp. 2d 37, 42 (D.D.C. 2006) (citing *Light v. Wolf*, 816 F.2d

746, 751 (D.C. Cir. 1987).

    **C.**    **The Complaint Should Be Dismissed Against the Libya Defendants Because the Court Lacks Subject Matter Jurisdiction Under the Foreign Sovereign Immunities Act (FSIA)**

    **1.**    **The Libya Defendants Are Immune From Suit.**

     Pursuant to Rule 12(b)(1), the Amended Complaint should be dismissed, in its entirety,

because the Libya Defendants are immune from suit.  As a consequence, this Court does not

have subject matter jurisdiction.

     As noted above, the FSIA grants immunity to "foreign states," as that term is defined by

the statute, 28 U.S.C. § 1604.  "A 'foreign state' includes 'political subdivisions' and 'agencies

or instrumentalities' thereof.  Individuals acting in their official capacities are considered

'agencies or instrumentalities of a foreign state' . . . ."  *Jungquist v. Sheikh Sultan Bin Khalifa al*

*Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997) (internal citations omitted); s*ee also Doe*, 400 F.

Supp. 2d at 104 ("The FSIA grants immunity to foreign sovereigns, and officials acting on behalf

of foreign sovereigns.").

In this case, the grant of immunity applies to all of the Libya Defendants, including the

individuals.  The Amended Complaint alleges that the individual defendants are liable based on

acts performed in their official capacities.  The plaintiffs allege:

> 11.    Defendant Qadhafi is the leader of Libya and performed
> acts within the scope of his office which caused terrorist
> acts described below.  He is sued under the ATCA and the
> ATA in his personal capacity.
>
> 12.    Defendant Sanusi was the head of the Libyan Internal
> Security Agency and performed acts within the scope of his
> office which caused the terrorist acts described below.  He
> is sued under the ATCA and the ATA in his personal
> capacity.
>
> 13.    Defendant Bishari was the head of the Libyan External
> Security Agency and performed acts within the scope of his
> office which cause the terrorist acts described below.  He is
> sued under the ATCA and the ATA in his personal
> capacity.

Am. Complaint ¶¶ 11-13.  Accordingly, as alleged, they are "agencies and instrumentalities" of a

foreign state.  *Jungquist*, 115 F.3d at 1027.  Thus, the FSIA immunity applies to the individuals.

The grant of immunity under the FSIA is subject only to the exceptions expressly

provided in the FSIA, which is the "sole basis for obtaining jurisdiction over a foreign state in

federal court."  *Hwang Geum Joo v. Japan*, 332 F.3d 679, 682 (D.C. Cir. 2003) (citing *Argentine

Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)).  Section 1604 of the FSIA

states in relevant part, ". . . a foreign state shall be immune from the jurisdiction of the courts of

the United States and of the States except as provided in sections 1605 through 1607 of this

chapter."   28 U.S.C. § 1604.

The sole exception to immunity *relied upon by the plaintiffs* in this case is found in §
1605(a)(1) which states:

> (a)    A foreign state shall not be immune from the jurisdiction of
>        courts of the United States or of the States in any case --
>
>    (i)    in which the foreign state has waived its immunity
>           either explicitly or by implication, . . . .

"In interpreting the FSIA 'federal courts have been virtually unanimous in holding that the
implied waiver provision of 1605(a)(1) . . . is to be construed narrowly.'" *Smith v. Socialist
People's Libyan Arab Jamahiriya*, 886 F. Supp. 306, 313 (E.D. N.Y. 1995) (quoting *Shapiro v.
Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991), *aff'd* 101 F.3d 239 (2d Cir. 1996)).
Courts interpreting § 1605(a)(1) will rarely find that a nation has waived its sovereign immunity
without strong evidence that waiver was what the state intended.  *See Maritime Int'l Nominees
Establishment v. Republic of Guinea*, 693 F.2d 1094, 1100 n. 10 (D.C. Cir. 1982), *cert. denied*,
464 U.S. 815 (1983); *Sampson v. Federal Republic of Germany & Claims Conf.*, 250 F.3d 1145
(7th Cir. 2001).

The "An implied waiver depends on the foreign government's having at some point indicated
its amenability to suit [in the United States]." *Princz v. Federal Republic of Germany*, 26 F.3d
1166, 1174 (D.C. Cir. 1994).  Courts will not create a new exception to the general rule of
immunity under the guise of an implied waiver.  *Hwang Geum Joo*, 332 F.3d at 687.

The plaintiffs allege that the Libya Defendants "implicitly waived" immunity under 28
U.S.C. § 1605(a)(1) when they aided and abetted, conspired with and materially supported the
terrorist group that hijacked EgyptAir Flight 648.  (Am. Complaint, ¶ 3).  Plaintiffs allege that,
because the Libya Defendants allegedly participated in terrorist activities, they have violated a

*jus cogens* norm[3] and have consequently implicitly waived immunity.  The plaintiffs' conclusion that a *jus cogens* violation constitutes an implied waiver of immunity is incorrect.

It is the law of this Circuit, and the majority of circuits, that "a violation of *jus cogens* norm does not constitute an implied waiver of sovereign immunity under the FSIA."  *Hwang Geum Joo*, 332 F.3d at 687.  The *Hwang Geum Joo* court emphatically reiterated the point in its decision stating:

> "As to whether a violation of *jus cogens* norms constitutes an implied waiver of sovereign immunity pursuant to 28 U.S.C. § 1605(a)(1), our holding in *Princz v. Federal Republic of Germany*, . . . is dispositive and remains good law;" . . . .

*Id.* at 681.  *See Princz*, 26 F.3d 1166; *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239 (2d Cir. 1996).

A *jus cogens* violation does not indicate an intent to be amenable to suit.  Courts in this Circuit "have no warrant, therefore, for holding that the violation of *jus cogens* norms . . . constitutes an implied waiver of sovereign immunity."  *Princz*, 26 F.3d at 1174.  The *Smith* trial court observed that "participating in a "terrorist" activity does not indicate a foreign sovereign's amenability to suit . . . ."  *Smith*, 886 F. Supp. at 315.  The Second Circuit carefully reviewed the trial court's conclusion, followed this Circuit's decisions and agreed that a *jus cogens* violation, such as terrorism, does not constitute an implied waiver of sovereign immunity.  *Smith*, 101 F.3d at 245.

The plaintiffs ignore the binding precedent in this Circuit and the reasoned analysis of courts in sister circuits.  They attempt to bootstrap the waiver of immunity from § 1605(a)(7) that applies to claims for "personal injury or death caused by an act of torture, extrajudicial killing,

---

[3] A *jus cogens* norm is a principle of international law that is accepted by the international community of states as a whole as a norm from which no derogation is permitted . . . ."  *Princz*, 26 F.3d at 1173 (internal quotations and citations omitted).

aircraft sabotage, hostage taking, or the provision of material support . . . " to establish implied waiver under § 1605(a)(1). Section 1605(a)(7) applies only to claims for personal injury or death, not property damage.[4]  The plaintiffs recognize that they cannot assert waiver of immunity under 1605(a)(7) in this case, so they have alleged that the Libya Defendants implicitly waived their sovereign immunity under § 1605(a)(1) because the Libya Defendants allegedly supported terrorist acts in violation of § 1605(a)(7).

The language of both provisions is clear and the law of the D.C. Circuit is clear.  A violation of *jus cogens*, or materially supporting a terrorist act, does not constitute an implicit waiver of sovereign immunity under § 1605(a)(1) of the FSIA.  Therefore, the Libya Defendants (both Libya and the individual defendants named) have not implicitly waived immunity and cannot be sued in this case.

It should also be unmistakably clear that plaintiffs' property damage claims against these defendants do not fall within § 1605(a)(2) through (7) and that those provisions do not provide subject matter jurisdiction of their property claims against the foreign state or the individuals named.

The case must be dismissed for lack of subject matter jurisdiction.  Accordingly, the Court does not need to proceed any further on the other issues in this case.

---

[4] Section 1605(a)(7) states, in pertinent part:

    (a)   A foreign state shall not be immune from the jurisdiction of courts of the United States in any case--
. . .

        (7)   not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency . . . .

**D.      Plaintiffs' Claims Are Time-Barred.**

As mentioned above, plaintiffs assert property damage claims against defendants protected by sovereign immunity per the terms of the FSIA, and the allegations are not within the exceptions to immunity in the FSIA.  Only if the Court finds it has jurisdiction to consider the plaintiffs' property claims does the Court need to consider issues of statute of limitations and equitable tolling.  In the interest of presenting alternative defenses, these issues are discussed herein.

All of the plaintiffs' claims against each of the Libya Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because all of the claims are time-barred.  A Rule 12(b)(6) motion is appropriate and should be granted, because it is apparent from the allegations of the complaint that the claims raised are barred by the statute of limitations.  *See National R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("[a] defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint.").

It is obvious from the face of the Amended Complaint that all of the claims raised by the plaintiffs are time-barred.  The ***property*** damage for which the plaintiffs seek recovery occurred on November 23, 1985, ***over 20 years before the original complaint was filed***.

**1.      Applicable Statute of Limitations.**

The Amended Complaint includes four counts:  (1) common law conversion; (2) common law trespass; (3) common law aircraft piracy; and (4) acts of international terrorism in violation of the ATA.  The plaintiffs allege that this Court has subject matter jurisdiction under the FSIA, ATCA and ATA.  The first three counts are brought pursuant to § 1605(a)(1) of the FSIA and the

ATCA, which have a ten-year statute of limitations. The ATA's four-year statute of limitation applies to Count IV.

a.    **The Ten-Year Statute of Limitations.**

The first three Counts of the Amended Complaint are brought under the ATCA and § 1605(a)(1) of the FSIA, neither of which include a statute of limitations. To determine the applicable statute of limitations in such a situation, courts will look to state law or closely analogous federal statutes. *Graham County Soil & Water Conservation Dist. v. United States*, 545 U.S. 409 (2005); *Acre v. Garcia*, 434 F.3d 1254 (11th Cir. 2006). For claims brought pursuant to the ATCA, the majority of Circuits having applied the 10-year statute of limitations set forth in the Torture Victim Protection Act of 1991 ("TVPA"), PL 102-256, 106 Stat. 73, 28 U.S.C. § 1350 note. 28 U.S.C. § 1350, note § 2 ("[n]o action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose."). Judge Robertson of this Court described the analysis in reaching this conclusion:

> The ATCA lacks a specific statute of limitations. In such a situation, courts apply the statute of limitations of a closely analogous federal statute, if federal law provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.
>
> *            *            *
>
> . . . federal courts found the TVPA to be closely analogous to the ATCA and borrowed its ten-year statute of limitations for the ATCA.

*Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 118-119 (D.D.C. 2003) (citations and internal quotations omitted); *see also Papa v. United States*, 281 F.3d 1004 (9th Cir. 2002).

The FSIA does not include a catch-all statute of limitations for each provision in which sovereign immunity is waived. The only FSIA limitations period is set forth in § 1605(f) which expressly applies only to claims under § 1605(a)(7). Section 1605(f) states:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

Even assuming the ATCA and FSIA apply to plaintiffs' claims, the ATCA and FSIA ten-year limitations periods begin to run when the "cause of action arose." *See* 28 U.S.C. § 1350 note and 28 U.S.C. § 1605(f). Consequently, the plaintiffs' claims arose on November 23, 1985, when the damage to the plane occurred. The plaintiffs had ten years -- until November 23, 1995 -- to bring their claims. The complaint was not filed until April 21, 2006 -- more than ten years after the expiration of the limitations period. Thus, the twenty-year-old claims brought by plaintiffs under the ATCA and FSIA are time-barred.

### b.    The Four-Year Statute of Limitations.

Count IV, the ATA claim, is also time-barred. The ATA provides a four-year statute of limitations for civil actions in 18 U.S.C. § 2335, which states:

> (a)    In general. Subject to subsection (b), a suit for recovery of damages under Section 2333 of this title shall not be maintained unless commenced within four years after the cause of action accrued.
>
> (b)    Calculation of period. The time of the absence of the defendant from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff, or of any concealment of the defendant's whereabouts, shall not be included in the four-year period set forth in subsection (a).

The ATA limitations period begins to run when the cause of action accrued. 18 U.S.C. § 2335(a). Under the facts of this case, the plaintiff could have and should have asserted their claim against the Libya Defendants within the four-year period.

Even assuming, *arguendo*, that the claims did not "accrue" until the ATA was enacted in 1992, then the plaintiffs had until 1996 to file the complaint. Similarly, even assuming that the Libya Defendants were "absent" from a jurisdiction where a similar claim might be brought for some period of time, the plaintiffs became aware of the ability to bring suit against the Libya Defendants when actions were maintained in the United States in the early 1990's. *See, e.g., Smith v. Socialist People's Libyan Arab Jamahiriya*, Case No. 1:93 CV 02658-SS (D.D.C.).

Thus, it is apparent from the face of the complaint that the ATA claim was brought well outside of any reasonable application of its four-year statute of limitations. Even if the Court takes all reasonable inferences and construes all facts in the light most favorable to the plaintiffs, it still must conclude that the ATA claim is time-barred. Regardless of which event triggers the calculation of the four-year period – the date of the property damage (1985), the date of the enactment of the statute (1992) or the date other cases against the Libya Defendants were maintained in this judicial district (1993), under all reasonable interpretations of the four-year statute of limitations, the ATA claim is time-barred.

<b>c.    <u>Equitable Tolling Does Not Apply.</u></b>

Equitable tolling provisions and principles do not extend the statute of limitations to April 2006, the time the Complaint was filed in this case. Even if some notion of non-statutory equitable tolling did apply, it would ***only*** extend the statute of limitations ***for a reasonable time***, not for ten years.

14

Equitable tolling is an equitable principle that extends the period within which a plaintiff may file a claim.  The burden is on the plaintiff to demonstrate that it is entitled to equitable tolling.  *Acre*, 434 F.3d 1254.  "The plaintiff bears this burden because equitable tolling is an exception to the rule of the statute of limitations, not the rule itself."  *Id.*  Equitable tolling is ***only appropriate in extraordinary circumstances***.  *Id.* (citing *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)).  The D.C. Circuit has instructed that even "where a plaintiff establishes circumstances justifying equitable tolling, the plaintiff is given extra time '*only* if he needs it.'"  *Vine v. Republic of Iraq*, No. 1:01CV2674, 2006 U.S. Dist. Lexis 63716, *27 (D.D.C. Sept. 7, 2006)[5] (quoting *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993), emphasis in original).  Moreover, if the plaintiff does not need extra time, the D.C. Circuit has held that "there is no basis for depriving the defendant the protection of the statute of limitations."  *Phillips*, 984 F.2d at 492.  Importantly, equitable tolling "does not bring about an automatic extension of the statute of limitations by the length of the tolling period."  *Id*.  The court should "only extend the time for filing by a reasonable period after the tolling circumstance [is] mended."  *Id*.

What constitutes a "reasonable period" will depend on the facts of the case and the diligence of the plaintiff. *See, generally, Burnett v. New York Cent. R.R.*, 380 U.S. 426 (1965) In *Phillips*, the D.C. Circuit determined that **10 months** was too long to extend the statute of limitations.  *Phillips*, 984 F.2d at 492.  In that case, plaintiff's son was a passenger in a plane which disappeared off the coast of Italy.  No remains of plaintiff's son were ever found and plaintiff petitioned various governmental entities for a report of death.  Slightly less than three years after his son's plane disappeared, plaintiff received a California court declaration of death.

---

[5] For ease of reference, a copy of *Vine v. Republic of Iraq*, No. 1:01CV2674, 2006 U.S. Dist. LEXIS 63716 (D.D.C. Sept. 7, 2006) is attached hereto as Exhibit A.

Nearly ten months after receiving the declaration of death, plaintiff filed a suit against the pilot's

conservator under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. App. § 761 *et seq.*

The district court dismissed plaintiff's claims as time-barred under DOHSA's three-year statute

of limitations.  *Id.* at 490.  Upholding the ruling of the district court, the D.C. Circuit rejected

plaintiff's argument that the principle of equitable tolling should be applied in that case.

Specifically, the Court noted:

> Here the justifications for delay, viewed in the light most favorable
> to plaintiff; ended no later than the California court's certificate of
> February 26, 1990.  The statute, without any tolling, did not expire
> until March 21, 1990.  As nothing had prevented plaintiff from
> gathering information in the preceding years, and more than three
> weeks remained, we question whether there was any need to
> extend the statute at all.  But plaintiff's reasonable needs surely did
> not require extending the time the full nine and one-half months
> that passed before he filed suit on December 12, 1990.

*Id.* at 492.

The legislative history of the TVPA discussing equitable tolling confirms the expectation

of diligence on the part of the plaintiff and that the limitations period was designed to prevent

stale claims.  House Report 102-367 states "a ten year statute of limitations insures that the

Federal Courts will not have to hear stale claims.  In some instances, such as where a defendant

fraudulently conceals his or her identification or whereabouts from the claimant, equitable tolling

remedies may apply to preserve the claimant's rights."  H.R. Rep. No. 102-367 (1991).  Senate

Report 102-249 provides examples of when and how equitable tolling may apply to a claim.

Footnotes 25 to 28 of Senate Report 102-249 cite specific cases in which the principle of

equitable tolling was at issue, including *Burnett*, 380 U.S. 424 (equitable tolling of Federal

Employers' Liability Act claims appropriate where plaintiff filed suit outside the statute of

limitations in Federal court after timely filed claims were dismissed by state court on grounds of

improper venue), and *Anderson v. Wisconsin Gas Co.*, 619 F. Supp. 635 (E.D. Wis. 1985) (holding that equitable tolling did not apply to plaintiff's Title VII claim where she was not "prevented from asserting her rights").  The cases cited as examples of how Congress intended the principle of equitable to be applied in TVPA cases.  The examples sharply illustrate that the application of the principle of equitable tolling does not restart the clock by giving the plaintiff an additional ten-year limitations period to file a claim.  Rather, the equitable tolling period is only the period during which there was some impediment to plaintiff in bringing the claim, such as the plaintiff's imprisonment or while the defendant was concealing his own whereabouts.

Indeed, there is no support in the legislative history of the TVPA or elsewhere for the proposition that a plaintiff should receive the benefit of the entire limitations period, regardless of need and regardless of length of the impediment.  There is an obvious lack of "equity" and fairness in such a proposition.  *Phillips* should be viewed as binding precedent on this issue.

Plaintiffs here do not allege any facts, and none can be reasonably inferred from the allegations in the Amended Complaint, that would support the application of equitable tolling for any substantial length of time.  The plaintiffs are underwriters and companies who collectively and severally insured the Boeing 747 that was owned by EgyptAir.  (Am. Complaint, ¶¶ 6, 50). The plaintiffs allege that they fully compensated the owner of the aircraft, EgyptAir, and consequently are seeking relief from the defendants in excess of $40,000,000.  (Am. Complaint, ¶¶ 50, 51).  No date of payment is alleged, however.  (*See generally* Am. Complaint).  The Court can reasonably infer from the allegations that the there was no physical or financial impediment preventing the plaintiffs from timely pursing litigation to protect their interests.

Indeed, there are no allegations in the Amended Complaint that demonstrate the plaintiffs' need to extend the time for filing beyond the lengthy statutes of limitations.  There are

17

no allegations that the plaintiffs did not have necessary facts to assert their claims within the four-year or ten-year statutes of limitations.  The alleged connection between the ANO and Libya was publicized shortly after the hijacking and during the criminal trial of Mr. Rezaq in Malta in 1986.  These plaintiffs could have readily gathered facts to satisfy the federal notice pleading requirements within the requisite time periods.  The plaintiffs cannot argue that a delay in gathering facts was unavoidable and that they needed an ***additional ten years*** to do so. Moreover, there are no allegations of defendant misconduct that lulled these sophisticated insurers and underwriters into inaction for ten years (or any length of time).  Critically, as the Supreme Court succinctly put it, this is a case in which plaintiffs have "slept on their rights." *Burnett*, 380 U.S. 426 (1965).

In the complete absence of any allegations or facts or statutory authority supporting the tolling of the statute of limitations some 20 years after the cause of action arose, the plaintiffs' claims should be dismissed as time-barred.  Those alleged common law and statutory claims for relief plaintiffs make are all time-barred.

### E. The Plaintiffs Cannot Maintain the ATA Claim.

Even if the Court determines that it has jurisdiction and that the plaintiffs' ATA claim is timely, which the Libya Defendants specifically deny, the plaintiffs do not have standing to pursue relief under the ATA and the claims are barred under the ATA which by its terms precludes claims against foreign states, agencies, officers and employees.

1.    __The Plaintiffs Do Not Have Standing.__

Section 2333 of the ATA provides civil remedies for "[a]ny ***national of the United States***

injured in his or her person, property or business by reason of an act of international terrorism . .

. ." 18 U.S.C. § 2333 (emphasis added).  In evaluating whether a plaintiff may pursue civil relief

under the ATA, the plaintiff's relationship to the United States is "critical."  *Biton v. Palestinian*

*Interim Self-Government Auth.*, 310 F. Supp. 2d 172, 175 (D.D.C. 2004).  Persons who are not

nationals of the United States cannot pursue civil relief under § 2333.

The plaintiffs in this case are the insurers and underwriters on the Policies that insured

EgyptAir's property.  Their claims are in the nature of subrogation in that they are seeking to

recover what they paid to EgyptAir.  (Am. Complaint, ¶ 51).  It is well-settled that an insurer

pursuing a claim based on subrogation has no greater rights than the insured would have if it was

bringing a direct claim.  "A subrogated insurer takes nothing by subrogation but the rights of the

insured." *Malacca Corp. v . Travelers Indem. Co.*, 421 F. Supp. 2d 137, 139 (D.D.C. 2006).

Moreover, the insurer is subject to whatever defenses would have been available against the

insured.  *Id.*

EgyptAir is not a national of the United States.  Consequently, it could not avail itself of

the civil remedies provided under § 2333 of the ATA.  The insurers have no greater rights than

EgyptAir.  *Id.*  Thus, they do not have standing to pursue claims under § 2333 of the ATA and

Count IV of the Amended Complaint should be dismissed.

2.    __The ATA Claim Is Barred by § 2337(2).__

Even if the Court determines that the plaintiffs have standing, the ATA claim is barred by

18 U.S.C. § 2337, which states:

> No action shall be maintained under Section 2333 of this title
> against

*     *     *

    (2)    a foreign state, an agency of a foreign state or an officer or
employee of a foreign state or agency thereof acting within
his or her official capacity or under color of legal authority.

The plain language of the statute leaves no doubt that the plaintiffs cannot assert ATA claims

against the Libya Defendants.  All of the Libya Defendants fall squarely within § 2337(2).

Despite the conclusory statements in paragraphs 11, 12 and 13 that the individuals are sued in

their individual capacities, the factual allegations all assert that the individuals were acting in

their official capacities.  *See generally* Am. Complaint.  Therefore, even if the plaintiffs have

standing, Count IV should be dismissed pursuant to 18 U.S.C. § 2337.

      **F.**      **The Alien Tort Claim Act Does  Not Apply to the Plaintiffs' Common Law
Claims.**

    Like the ATA claims, even if the Court finds it has jurisdiction and that the ATCA claims

are not time-barred, the common law claims for conversion and trespass brought under the

ATCA must be dismissed.

    The ATCA confers "original jurisdiction of any civil action by an alien for a tort only,

committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.

The statute does not create a cause of action but confers subject matter jurisdiction in district

courts if three conditions are met:  (1) the plaintiff is an alien (2) suing for a tort (3) committed in

violation of the law of nations.  *See Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995). The

term "law of nations" is not defined in the statute but was explained by the Supreme Court in

*Sosa v. Humberto Alvarez-Machain*, 542 U.S. 692, 724-725 (2004):

        In sum, although the [ATCA] is a jurisdictional statue creating no
new causes of action, the reasonable inference from the historical
materials is that the statute was intended to have practical effect
the moment it became law.  The jurisdictional grant is best read as
having been enacted on the understanding that the common law

> would provide a cause of action for the modest number of international law violations with a potential for personal liability at the time.
>
> *        *        *
>
> We have found no basis to expect that Congress had any examples in mind beyond those torts corresponding to Blackstone's three primary offenses:  violation of safe conducts, infringement of the rights of ambassadors, and piracy.
>
> *        *        *
>
> Accordingly, we think courts should require any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized.

In denying jurisdiction in *Sosa*, the Supreme Court instructed courts to limit the nature of private claims under the ATCA only to those that are as definite and widely accepted among civilized nations as when § 1350 was enacted.  *Id.* at 732.  "And the determination of whether a norm is sufficiently definite to support a cause of action should (and, indeed, inevitably must) involve an element of judgment about the practical consequences of making that cause of action available to litigants in federal courts."  *Id.* at 732-733.

Common law conversion and common law trespass are not the type of widely accepted norms that are recognized among the "law of nations."  *See generally Sosa*, 542 U.S. 692*; see also Arndt v. UBS AG*, 342 F. Supp. 2d 132, 138 (E.D. N.Y. 2004) (where plaintiffs' allegations were "predicated on garden variety commercial claims, including fraud, unjust enrichment, conversion and misrepresentation," the court found it "relatively easy" to find that these common law claims did not "amount to a violation of customary international law"); *Zapata v. Quinn*, 707 F.2d 691, 692 (2d Cir. 1983) (only rules prohibiting acts that are "shockingly egregious" likely to give rise to violation of universally recognized principles of international law) (per

curiam); s*ee also Cohen v. Hartman*, 634 F.2d 318 (5th Cir. 1981) (holding that tortious

conversion of property does not constitute a violation of law of nations necessary to meet

jurisdictional prerequisites of the ATCA); *IIT v. Vencap Ltd.*, 519 F.2d 1001, 1015 (2d Cir.

1975) (refusing to apply the ATCA to a suit by an international investment trust against a

Bahamian corporation and others, for fraud, conversion, and corporate waste in conjunction with

a securities scheme; finding that "a violation of the 'law of nations' arises only when there has

been a violation by one or more individuals of those standards, rules, or customs (a) affecting the

relationship between states or between an individual and a foreign state, and (b) used by those

states for their common good and/or in dealings *inter se*," and concluding that ATCA is to be

applied only in extraordinary circumstances).

Therefore, plaintiffs' common law conversion and trespass claims brought under the

ATCA should be dismissed.

### G.    The Complaint Fails to State a Claim Against Defendants Abdallah al-Sanusi and Ibrahaim al-Bishari.

If the Court determines it has jurisdiction and that the claims are not time-barred, the

plaintiffs still cannot pursue claims against Abdallah al-Sanusi and Ibrahaim al-Bishari.  The

Amended Complaint alleges that defendants Abdallah al-Sanusi and Ibrahaim al-Bishari

provided aid and material support to members of ANO which caused the terrorist attack at issue

in this case.  The Amended Complaint does not provide any allegations concerning the time or

details of the specific acts of aid or material support provided by Abdallah al-Sanusi and

Ibrahaim al-Bishari.  Rather, plaintiffs only allege that Abdallah al-Sanusi was the head of LISO,

that Ibrahaim al-Bishari was the head of LESO, and that LISO and LESO are two of the Libyan

intelligence services through which Libya sponsored ANO.  *See* Am. Complaint, ¶¶ 9, 10, 12,

13.  Contrary to plaintiffs' allegations, Abdallah al-Sanusi was not the head of, nor did he have

any connection with, either LISO or LESO at any time from 1985 to the present.  Therefore,

plaintiffs' conclusory allegations against Abdallah al-Sanusi are insufficient to state a claim.

Plaintiffs' allegations against defendant Abdallah al-Sanusi are as follows:

> 9.     Defendant Libyan Internal Security ("LISO") is one of the
> Libyan intelligence services through which Libya
> sponsored Abu Nidal, which caused the terrorist acts
> described below.

*      *      *

> 12.    Defendant Major Abdallah al-Sanusi was head of the
> Libyan Internal Security Agency and performed acts within
> the scope of his office, which caused the terrorist acts
> described below.

Am. Complaint, ¶¶ 9, 12.  The Amended Complaint does not identify any specific acts

performed by Abdallah al-Sanusi.  Instead, plaintiffs rest solely upon their allegation that

Abdallah al-Sanusi was the head of LISO at some undetermined point in time stating their case

against al-Sanusi.  Notwithstanding plaintiffs' conclusory allegations to the contrary, Abdallah

al-Sanusi was not the head of nor did he have any connection with LISO at any time from 1985

top the present.[6]  Based upon the foregoing, plaintiffs can prove no cause of action from the

allegations set forth against al-Sanusi which would entitle them to relief and these claims should

be dismissed.

The Amended Complaint also makes the following allegations against Ibrahaim

al-Bishari:

> 10.    Defendant Libyan External Security is one of the Libyan
> intelligence services through which Libya sponsored Abu
> Nidal, which caused the terrorist acts described below.

---

[6] Counsel for defendants has been advised that Abdallah al-Sanusi is currently hospitalized for treatment of a medical condition.  Due to al-Sanusi's medical condition, as well as his status as a foreign defendant, counsel for defendants is unable to provide the Court with supporting documentation at this time.  To the extent necessary, defendants will supplement their filing with supporting documentation and proof that al-Sanusi was not the leader of LISO during the relevant time period as soon as it becomes available.

\*        \*        \*

13.    Defendant Ibrahaim al-Bishari was the head of the Libyan
       External Security Agency and performed acts within the
       scope of his office, which caused the terrorist acts
       described below . . . .

The Amended Complaint once again does not assert any factual allegations concerning the

alleged acts undertaken by Ibrahaim al-Bishari which resulted in the terrorist attack.

Nonetheless, plaintiffs' claims are irrelevant since Ibrahaim al-Bishari died in a car accident on

September 13, 1997.  *See* Certificate of Death in Arabic and English translation attached hereto

as Exhibits B and C.  Clearly, plaintiffs are unable to maintain any claims against Ibrahaim al-

Bishari and all such claims should be dismissed.

In addition, LISO and LESO are departments of the Libyan Government and cannot be

sued separately from the Libyan Government.  28 U.S.C. § 1603(a) and (b).

**H.    The Complaints Against the Libya Defendants Should Be Dismissed for
       Ineffective Service of Process.**

As described above, the Libya Defendants are immune from suit based on the FSIA.

They have raised that defense and others because that argument disposes of the case on the

merits.  That does not, however, minimize the fact that the plaintiffs did not properly effectuate

service.

Service against a foreign sovereign is governed by 28 U.S.C. § 1608(a).  "In the D.C.

Circuit, the methods set forth in § 1608(a) are the sole channels through which service may be

properly effected on a foreign sovereign."  *Doe v. State of Israel*, 400 F. Supp. 2d 86, 102

(D.D.C. 2005).  There are four methods by which a plaintiff can effectuate service under

§ 1608(a), as paraphrased below:

1.      Delivery of a copy of the summons and complaint pursuant to the terms of a *preexisting arrangement* between the plaintiff and the foreign sovereign;

2.      Delivery pursuant to any applicable *international convention*[7] concerning service of judicial documents;

3.      The dispatch of a *copy of the summons, complaint, and notice of suit, one properly translated copy of each* of the foregoing [i.e., translated into the official language of the foreign state], through a mail delivery mechanism that requires a *signed receipt* (the clerk of the court must address and send such materials directly to the primary official of the foreign sovereign's foreign affairs ministry); or

4.      . . . (inapplicable)

In the case at bar, there is no preexisting arrangement between the plaintiffs and Libya, and Libya is not party to the service conventions, thus neither of the first two provisions apply. The plaintiffs purportedly served the defendants pursuant to 28 U.S.C. § 1608(a)(3) which requires delivery to ministry of foreign affairs of (1) a copy of the summons, (2) a copy of the complaint, (3) notice of suit (in the form prescribed by the Secretary of State by regulation), and (4) one properly translated copy of each of the foregoing. ***Each*** named defendant must be properly served with a summons, complaint and notice. It is unclear whether a summons, complaint, and notice was served in accordance with § 1608(a)(3) upon the Government of Libya. Accordingly, Defendant Libya interposes this defense and requests that the Court require the plaintiffs to demonstrate that service upon the foreign state Libya was effective.

---

[7] The two applicable multilateral treaties on service of process to which the United States is a party are: (1) the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters (the Hague Service Convention), 20 U.S.T. 1361; and (2) the Inter-American Convention on Letters Rogatory (Inter-American Service Convention), OAS Treat Text B-36, and Additional Protocol, OAS Treaty Text B-46. Libya is a party to neither convention, so this option is not available to plaintiffs seeking to effect service of process upon any of the named defendants.

A different service rule applies to agencies or instrumentalities such as the Individual defendants who are alleged to have acted in their official capacity in committing the acts complained of in the Complaint.  28 U.S.C. § 1608(b) governs service on agencies or instrumentalities of a foreign states. [8]  The provisions of § 1608(b) are summarized as follows:

1.    By delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

2.    If no special arrangement exists, by:

    a.    Delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or

    b.    In accordance with an applicable international convention on service of judicial documents; or

3.    If service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state:

    a.    As directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request  or

---

[8] If Qadhafi, Sanusi and Bishari were not considered agencies or instrumentalities of a foreign state, service would be prescribed by F.R.C.P. 4(f), which provides:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:  (1) by any internationally agreed means reasonably calculated to give notice, such as those mans authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:  (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory or letter of request; or (C) unless prohibited by the law of the foreign country, by (i) delivery to the individual personally of a copy of the summons and the complaint; or (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or (3) by other means not prohibited by international agreement as may be directed by the court.

Like the FSIA, this rule also requires a means of service that is reasonably calculated to give notice to the defendants.

        b.        By any form of mail requiring a signed receipt, to
                      be addressed and dispatched by the clerk of the
                      court to the agency or instrumentality to be served,

                      or

        c.        As directed by order of the court consistent with the
                      law of the place where service is to be made.

Plaintiffs failed to serve the individual defendants either in accordance with 28 U.S.C.

§ 1608(b)(3) or Federal Rule 4(f).

An individual acting in his ***official capacity*** is an agency or instrumentality of a foreign

state for purposes of the service requirements of § 1608(b).  *See Doe*, 400 F. Supp. 2d 86 at 102.

The plaintiffs did not effectuate service  pursuant to § 1608(b) because: there was no direction by

an authority of the foreign state in response to a letter rogatory; the "service" by DHL in this case

was not addressed and dispatched to the ***individual to be served*** and finally this Court entered ***no***

***order as to manner of service***, and even if it did, it would be ineffective because "service" by

DHL is not good service under the law of Libya.

This case must be dismissed for ineffective service.

## I.      Claims Against Qadhafi Are Subject to the Head-of-State Doctrine.

The plaintiffs have alleged that Colonel Qadhafi is the "the leader of Libya."  The

Amended Complaint further alleges that Colonel Qadhafi is subject to suit in the United States

courts pursuant the FSIA.  Plaintiffs claim that Colonel Qadhafi, while undertaking acts within

the scope of his office, supported the terrorist attack on November 23, 1985, and is therefore

liable for the terrorist attack.  However, the FSIA does not apply to foreign heads of state.

The determination as to whether a foreign head of state enjoys immunity from suit rests

with the Executive Branch.  The U.S. Attorney General has not determined whether the head-of-

state doctrine applies to Colonel Qadhafi.  Therefore, plaintiffs should be barred from proceeding

with their claims against Colonel Qadhafi subject to the Executive Branch's decision regarding

Qadhafi's immunity under the head-of-state doctrine.

As described above, the FSIA generally provides *foreign states* with immunity from suit

in courts of the United States. *See* 28 U.S.C. § 1604; *Wei Ye v. Jiang Zemin*, 383 F.3d 620, 625

(7th Cir. 2004). The FSIA does not address the ability to bring suit in courts of the United States

against foreign heads of state. The Seventh Circuit has noted:

> The FSIA does not, however, address the immunity of foreign
> heads of states. The FSIA refers to foreign states, not their
> leaders. . . .The FSIA defines a foreign state to include a political
> subdivision, agency or instrumentality of a foreign state but makes
> no mention of heads of state. 28 U.S.C. § 1603(a). Because the
> FSIA does not apply to heads of states, the decision concerning the
> immunity of foreign heads of states remains vested where it was
> prior to 1976--with the Executive Branch.

*Wei Ye*, 383 F.3d at 625 (footnote omitted) (citing *Noriega*, 117 F.3d at 1212). With respect to

heads of state, the Executive Branch's suggestion of immunity is considered to be conclusive and

not subject to judicial inquiry. *See Wei Ye*, 383 F.3d at 625 (citing *Spacil v. Crowe*, 489 F.2d

614, 617 (5th Cir. 1974) ("The precedents are overwhelming. For more than 160 years

American courts have consistently applied the doctrine of sovereign immunity when requested to

do so by the executive branch. Moreover, they have done so with no further review of the

executive's determination."); *Isbrandtsen Tankers, Inc. v. President of India*, 446 F.2d 1198,

1201 (2nd Cir. 1971); "The obligation of the Judicial Branch is clear -- a determination by the

Executive Branch that a foreign head of state is immune from suit is conclusive and a court must

accept such a determination without reference to the underlying claims of a plaintiff." *Wei Ye*,

383 F.3d at 626 (citing *Spacil*, 489 F.2d at 618).

In a separate case currently pending in the District Court for the District of Columbia in

which Colonel Qadhafi is a defendant, Judge Urbina of this Court has requested the position of

the Executive Branch regarding whether Qadhafi is entitled to head-of-state immunity. *See Collett v. Socialist People's Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 237 (D.D.C. 2005). In that case, Judge Urbina held that the "Attorney General may advise the court . . . regarding the application of the head-of-state immunity doctrine." *Id.*, 362 F. Supp. 2d 230 (D.D.C. March 1, 2005). Similarly, in *Pugh v. Socialist People's Libyan Arab Jamahiriya*, Judge Kennedy of this Court has held that plaintiffs cannot proceed with their claims against the defendant Qadhafi in his official capacity as Libya's head of state until the Attorney General has had the opportunity to submit his views regarding the possibility of Colonel Qadhafi being granted head-of-state immunity. *Pugh v. Socialist People's Libyan Arab Jamahiriya*, C.A. No. 02-02026, 2006 U.S. Dist. LEXIS 58033, *29 (D.D.C. May 11, 2006)[9] ("Given the important foreign policy considerations at play and because a federal court must satisfy itself that it has subject matter jurisdiction over a defendant before it proceeds, the court concludes that it must offer the Attorney General the opportunity to submit his views regarding the possibility of Qadhafi being granted head-of-state immunity in this case.") (internal citations omitted)).

In both *Collett* and *Pugh*, the Attorney General has filed Statements of Interest of the United States in which the Executive Branch has deferred responding to the respective courts' invitations to submit views regarding the application of the head-of-state doctrine. In both cases, the Attorney General has stated that, "the United States remains in the midst of significant discussions concerning the course of U.S.-Libya relations," and that, "it would serve the diplomatic and foreign policy interests of the United States to delay further responding to the Court's invitation . . . ." *See* Statements of Interest of the United States attached hereto as Exhibits E and F.

---

[9] For ease of reference, a copy of *Pugh v. Socialist People's Libyan Arab Jamahiriya*, C.A. No. 02-02026, 2006 U.S. Dist. LEXIS 58033, *29 (D.D.C. May 11, 2006) is attached hereto as Exhibit D.

The U.S. Attorney General has not taken a position on whether the head-of-state doctrine applies to Colonel Qadhafi.  If this Court should find that the Court has subject matter jurisdiction, the Court should stay all pending claims against Colonel Qadhafi until such time as the Executive Branch offers a directive on the applicability of the head-of-state doctrine to Colonel Qadhafi.  However, if, as the Libyan Defendants contend, the Court finds (for the reasons stated in this Memorandum) that the Court lacks subject matter jurisdiction, the Court should dismiss the case and accordingly does not need to address the head of state doctrine.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint against the Libya Defendants should be dismissed with prejudice.

Respectfully, Submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

By:                 /s/ *Thomas J. Whalen*
                         Thomas J. Whalen, Esq. (Bar No. 208512)

                 /s/ *Mark A. Johnston*
                         Mark A. Johnston, Esq. (Bar No. 455764)
                         1747 Pennsylvania Ave., N.W.,
                         Twelfth Floor
                         Washington, D.C. 20006
                         (202) 659-6600

                         Wendy West Feinstein, Esq. (Pa ID No. 86698)
                         (*Admitted Pro Hac Vice*)
                         600 Grant Street
                         44th Floor
                         Pittsburgh, PA  15219

Dated:  December 5, 2006         (412) 566-6000

                         Counsel for Defendants, Great Socialist People's
                         Libyan Arab Jamahiriya, Libyan Internal
                         Security, Libyan External Security, Mu'Ammar
                         Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim
                         Al-Bishari