## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CERTAIN UNDERWRITERS AT )
LLOYDS LONDON, EACH SEVERALLY )
SUBSCRIBING TO INSURANCE )  Case No. 1:06-cv-00731-GK
POLICIES EACH FOR HIS OWN PART )
AND NOT ONE FOR THE OTHER )
NUMBERED AE2141B AND VS5057L, )
*et al.* )
                      )
      Plaintiffs, )
                      )
    v. )
                      )
GREAT SOCIALIST PEOPLE'S LIBYAN )
ARAB JAMAHIRIYA a/k/a LIBYA, *et al.* )
                      )
      Defendants. )

## LIBYA DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants, Great Socialist People's Libyan Arab Jamahiriya a/k/a LIBYA ("Libya"),

Libyan Internal Security a/k/a al-'Amn al-Dhakhili, Libyan External Security a/k/a al-'Amn al-

Khariji, Mu'ammar al-Qadhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari (the "Libya

Defendants"), by the undersigned counsel, respectfully submit the following Reply to Plaintiffs'

Opposition to the Libya Defendants' Motion to Dismiss.

## I.    **INTRODUCTION**

The Libya Defendants are immune from suit in this Court, and the Plaintiffs' Amended Complaint should be dismissed. Nothing in the Plaintiffs' Brief in Opposition to the Libya Defendants' Motion to Dismiss[1] should persuade this Court that an exception to the Libya Defendants' immunity applies. On the contrary, as more fully set forth in the Libya Defendants' Motion to Dismiss, no exception to immunity applies to the Libya Defendants with respect to the claims alleged, thus, they are immune from suit and the Plaintiffs' Amended Complaint should be dismissed.

Though the immunity issue is wholly dispositive, there are other grounds on which the Amended Complaint should be dismissed, including the statute of limitations, as more fully set forth below and in the Motion to Dismiss.

## II.    **SUMMARY OF ARGUMENT**

In their 54-page Brief in Opposition, the Plaintiffs creatively argue in an attempt to salvage their lawsuit despite the clear and unequivocal absence of jurisdiction in this Court. Based on any reading of the applicable statutes, the Libya Defendants are immune from suit and the Plaintiffs' 20-year-old property damages claims are time-barred.

The Plaintiffs' Brief in Opposition distorts and misinterprets the Federal Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1330, 1602-1611. The Plaintiffs misinterpret and misapply §§ 1605 and 1606 of the FSIA and ignore the plain and direct language of the statute. Moreover, the Plaintiffs ignore binding precedent in this Circuit which is fatal to their claim that

---

[1] References to the "Libya Defendants' Motion to Dismiss" include the Libya Defendants' motion to dismiss and the memorandum of points and authorities in support of the motion to dismiss filed on December 5, 2006.

the Libya Defendants waived immunity by implication. "Under the FSIA, a foreign state is immune from the jurisdiction of both federal and the state courts except as provided by . . . nine specifically enumerated exceptions, *see id.*, § 1605(a)(1) through (7), (b), (d), . . . *see, id.*, § 1607. **If no exception applies, a foreign sovereign's immunity under the FSIA is complete:  The district court lacks subject matter jurisdiction over the plaintiffs' case.** *See, id.*, § 1330(a).  Thus, the sovereign has an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (emphasis added) (citing *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990)).

The Libya Defendants have not implicitly waived immunity under Section 1605(a)(1) and as a consequence this Court does not have jurisdiction to hear the Plaintiffs' 20-year-old property damage claims.  Consequently, the Libya Defendants' motion to dismiss should be granted in its entirety.

The immunity argument is fully dispositive.  However, there is another basis to dismiss the Amended Complaint in its entirety.  Even if the Court determines that the Libya Defendants are not immune and have, in some way, waived their immunity, the Plaintiffs' property damage claims are barred by the applicable statutes of limitation.  The stale nature of the Plaintiffs' claims warrants a complete dismissal of the Plaintiffs' Amended Complaint.

In addition to the above two issues, the Libya Defendants restate and incorporate herein all of the arguments raised in their Motion to Dismiss.  In the interest of judicial economy, this Reply Brief is limited to three issues: (i) the fully dispositive issue of sovereign immunity; (ii) the fully dispositive issue of statute of limitations; and (iii) the issue of improper service on the individual defendants.

## III.    ARGUMENT

### A.    The Libya Defendants Are Immune From Suit.

The Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because the Plaintiffs' allegations do not bring this case within a statutory exception of immunity as set forth in Section 1605 of the Federal Sovereign Immunities Act. The Libya Defendants have demonstrated that no exception to sovereign immunity applies to the Plaintiffs' claims. Consequently they are protected by sovereign immunity and this Court does not have jurisdiction.

As this Court is no doubt aware, the Federal Sovereign Immunities Act "grants immunity to foreign sovereigns, ministries of foreign sovereigns, and officials acting on behalf of foreign sovereigns." *Doe v. Israel*, 400 F.2d 86, 104 (D.D.C. 2005); 28 U.S.C. § 1604. This grant of immunity is subject only to the exceptions provided within the FSIA. "Under the FSIA, a foreign state is immune from the jurisdiction of both federal and the state courts except as provided by . . . nine specifically enumerated exceptions, *see id.*, § 1605(a)(1) through (7), (b), (d), . . . s*ee, id.*, § 1607. **If no exception applies, a foreign sovereign's immunity under the FSIA is complete:  The district court lacks subject matter jurisdiction over the plaintiffs' case.** *See, id.*, § 1330(a). Thus, the sovereign has an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting*, 216 F.3d at 39 (emphasis added) (citing *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990)).

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in federal court." *Hwang Geum Joo v. Japan*, 332 F.3d 679, 682 (D.C. Cir. 2003) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989), *vacated on other grounds*, 124 Sup. Ct. 2835 (2004). The Plaintiffs admit that the only exception arguably applicable to their property damage claims is Section 1605(a)(1) which states:

> (a)    A foreign state shall not be immune from jurisdiction of courts in the United States or of the states in any case -- (i) in which the foreign state has waived its immunity either explicitly or by implication, . . . .

As described in the Motion to Dismiss, "federal courts have been virtually unanimous in holding that the implied waiver provision of 1605(a)(1) . . . is to be construed narrowly." *Smith v. Socialist Peoples Libyan Arab Jamahiriya*, 886 F. Supp. 306, 313 (E.D. N.Y. 1995) (quoting *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991), *aff'd* 101 F.3d 239 (2d Cir. 1996)).

It is the law of this Circuit that "an implied waiver depends on a foreign government having at some point indicated its amenability to suit [in the United States]." *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994). There are absolutely no allegations in the Amended Complaint, nor can the Plaintiffs make any allegation by way of any further amendment, that the Libya Defendants have implicitly waived immunity by indicating an amenability to this property damage suit in the United States.

Plaintiffs assert that the Libya Defendants' alleged material support for terrorism constitutes an implied waiver of immunity under Section 1605(a)(1). As described in more detail in the Libya Defendants' Motion to Dismiss, the Plaintiffs are incorrect. Support of terrorism or engaging in terrorist acts are considered violations of *jus cogens* norms. It is well settled, and is the law in this Circuit, that "a violation of *jus cogens* norm does not constitute an

implied waiver of sovereign immunity under the FSIA." *Hwang Geum Joo*, 332 F.3d at 687.

The *Hwang Geum Joo* court emphatically reiterated the point in its decision stating:

> "As to whether a violation of *jus cogens* norms constitutes an
> implied waiver of sovereign immunity pursuant to 28 U.S.C. §
> 1605(a)(1), our holding in *Princz v. Federal Republic of Germany*,
> . . . is dispositive and remains good law; . . ."

*Id.* at 681. *See Princz*, 26 F.3d 1166; *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101

F.3d 239 (2d Cir. 1996).

A *jus cogens* violation does not indicate an intent to be amenable to suit. The *Smith* trial

court observed that "participating in a "terrorist" activity does not indicate a foreign sovereign's

amenability to suit. . . ." *Smith*, 886 F. Supp. at 315. The Second Circuit carefully reviewed the

trial court's conclusion, followed this Circuit's decisions and agreed that a *jus cogens* violation,

such as terrorism, does not constitute an implied waiver of sovereign immunity. *Smith*, 101 F.3d

at 245.

Faced with binding authority that is fatal to the claims alleged in their Amended

Complaint, the Plaintiffs have attempted to manipulate the plain language of the FSIA and distort

its provisions in a desperate attempt to convince this Court that it has jurisdiction and that the

Libya Defendants are not immune from suit. The Plaintiffs argue, wholly without authority, that

(i) "the same activity that constitutes a waiver of immunity under 1605(a)(7) constitutes [an

implied] waiver of immunity under 1605(a)(1)" (Brief in Opp., p. 16); (ii) the operation of 28

U.S.C. § 1606, . . . reduces the formerly-immune Libyan Defendants to the status of non-

immune private individual before the Court." (Brief in Opp., p. 18); and (iii) alleged support for

terrorism made it reasonably foreseeable that the Libya Defendants would be haled into this

Court for property damage claims. (Brief in Opp., pp. 22-23). It is telling that the Plaintiffs

offer no statutory or other authority for their theory of implied waiver of immunity. Indeed,

nearly an identical theory was rejected by Judge Bates of this District in *Abur v. Republic of Sudan*, 437 F. Supp.2d 166 (D.D.C. 2006), which is discussed at length below. Like the plaintiffs in *Abur*, the Plaintiffs here are asking this Court to rewrite the law and, in violation of the binding precedent of this Circuit, to create an exception to sovereign immunity where Congress did not create one.

### 1.    Section 1605(a)(7) Is Not Applicable.

Plaintiffs ignore the authority described above and in the Libya Defendants' Motion to Dismiss. They ignore the fact that allegations of participation in terrorist acts is an alleged violation of *jus cogens*, which does not constitute an implied waiver of immunity under the FSIA. Finally, they ignore the fact that these Plaintiffs cannot satisfy the criteria for the exception immunity provided in Section 1605(a)(7).

The state sponsor of terrorism exception to sovereign immunity set forth in Section 1605(a)(7) provides a vehicle for nationals of the United States injured or killed by acts of terrorism to pursue a claim for money damages in the United States if certain criteria are met. It states:

> (a)    A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case-- . . .
>
>> (7)    not otherwise covered by paragraph (2), in which **money damages are sought against a foreign state for personal injury or death** that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act if such act or provision of material support is engaged by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, **except that the court shall decline to hear a claim under this paragraph--** . . .
>
>>> (B)    even if the foreign state is or was so designated, if-- . . .

    (ii)    **neither the claimant nor the victim was a national of the United States** (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act [8 USC § 1101(a)(22)]) when the act upon which the claim is based occurred.

28 U.S.C. § 1605(a)(7) (emphasis added).  It is indisputable that the **Plaintiffs here cannot satisfy any of the criteria** for bringing a claim pursuant to Section 1605(a)(7).  The Plaintiffs are pursuing money damages for property damage, not personal injury or death and the Plaintiffs (except one) are not U.S. citizens.  Despite the obvious and unquestionable inapplicability of Section 1605(a)(7), the Plaintiffs go to great pains to argue that it conclusively establishes that the Libya Defendants have implicitly waived immunity.  The state sponsor of terrorism exception to immunity is not universally applicable to any class of plaintiffs.  It is a well-defined, specific exception to immunity that can be applied only if the criteria are satisfied.  28 U.S.C. § 1605(a)(7).  A cursory review of Section 1605(a)(7) reveals that it is in no way applicable to the Plaintiffs' property damage claims.

Though the Plaintiffs admit on the one hand that the only exception to sovereign immunity that applies to their claims is Section 1605(a)(1), they attempt to argue on the other hand that, because some other set of claimants may have been able to assert a claim under Section 1605(a)(7), the Libya Defendants have consequently implicitly waived jurisdiction as to **any** potential claims brought by **any** potential plaintiff regardless of that plaintiff's ability to pursue a claim under 1605(a)(7).  Such an argument is an absurd interpretation of the plain language of the statute and should be rejected by this Court as it was by Judge Bates in *Abur*.

In *Abur*, Judge Bates was faced with a strikingly similar argument to that advanced by the Plaintiffs here.  The plaintiffs in that case sought recovery against Sudan and Iran for personal injury or death suffered in bombings that occurred in 1998 in Africa.  Of the over 100 plaintiffs,

{J1066037.3}

8

only two were nationals of the United States. The alien plaintiffs argued that although Section 1605(a)(7) did not apply to their claims, the defendants had nonetheless implicitly waived sovereign immunity under Section 1605(a)(1) because the defendants had materially supported terrorist activity directed at U.S. nationals that would have been excepted from immunity under Section 1605(a)(7). Judge Bates rejected this argument, found the defendants to be immune as to the alien plaintiffs' claims and dismissed the alien plaintiffs' claims. The analysis and conclusions of Judge Bates are quoted at length below because they are applicable here and because the Libya Defendants respectfully suggest that the same result should be reached by this Honorable Court.

In concluding that no exception to sovereign immunity applied to the alien plaintiffs' claims, Judge Bates applied the plain language of the statue and the binding precedent of this Circuit. He wrote:

> Plaintiffs advance an interpretation of section 1605(a)(1) that would create a form of supplemental subject-matter jurisdiction over claims for terrorism-related injuries brought by non-U.S. nationals. According to plaintiffs' theory, Sudan and Iran implicitly waived their sovereign immunity for *all* claims arising out of their "non-immune conduct" -- that is, the conduct that forfeited sovereign immunity for the claims of the U.S.-citizen plaintiffs pursuant to section 1605(a)(7). In other words, in plaintiffs' view, if Sudan and Iran are subject to suit in this Court by U.S. nationals under section 1605(a)(7), then they also are subject to suit here by aliens for the same conduct, based on implied waiver.
>
> *                    *                    *
>
> The Court, however, finds plaintiffs' interpretation of section 1605(a)(1) is untenable for two reasons. First, it is inconsistent with the well-established rule that "the implied waiver provision of Section 1605(a)(1) must be construed narrowly." *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir. 1997) (quoting *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991)). Second, such an interpretation of section

1605(a)(1) would essentially amount to a judicially created amendment to the declination clause of section 1605(a)(7), which, of course, is beyond the scope of this Court's power (or, for that matter, any federal court's power).

Courts, including this Court, have declined to extend the application of section 1605(a)(1) much beyond the two traditional examples of implied waiver: (1) agreements about forum selection, choice of law, or arbitration, and (2) submission of a responsive pleading without raising the defense of sovereign immunity. *See Princz v. Fed. Republic of Germany*, 307 U.S. App. D.C. 102, 26 F.3d 1166, 1174 (D.C. Cir. 1994) (referring to the examples provided by the legislative history of the FSIA, H.R. Rep. No. 94-1487, at 18 (1976) & S. Rep. No. 94-1310, at 18 (1976)); *Doe v. Israel*, 400 F. Supp. 2d 86, 105 (D.D.C. 2005) ("Section 1605(a)(1) is construed narrowly; the judiciary is not to re-draft the FSIA so as to force an exception that Congress did not craft."); *see also Smith*, 101 F.3d at 244 ("Congress primarily expected courts to hold a foreign state to an implied waiver of sovereign immunity by the state's *actions in relation to the conduct of litigation*.") (emphasis supplied).  In *Princz*, the D.C. Circuit rejected an argument very similar to that raised by plaintiffs here:  that waiver of sovereign immunity is implied whenever a country violates *jus cogens* norms of the law of nations.  The court said that such a theory of implied waiver was "incompatible with the intentionality requirement implicit in [section] 1605(a)(1)." *Princz*, 26 F.3d at 1174; *see also Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 284 U.S. App. D.C. 333, 905 F.2d 438, 444 (D.C. Cir. 1990) ("Congress anticipated ... that waiver would not be found absent a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so.") (quoting *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 378 (7th Cir. 1985)).  Moreover, another judge of this court rejected this precise theory in a suit against Afghanistan by Kenyan citizens who were victims of the 1998 embassy bombing in Nairobi.  *See Mwani v. United States*, No. 99-CV-125, slip op. at 10-11 (D.D.C. June 22, 2004), *aff'd* in part and *rev'd* in part on other grounds sub nom. *Mwani v. bin Laden*, 368 U.S. App. D.C. 1, 417 F.3d 1, 15 (D.C. Cir. 2005) (noting that plaintiffs on appeal abandoned their reliance on the implied-waiver theory).

Although plaintiffs propose a narrow application of the implied-waiver exception -- whereby implied waiver by virtue of terrorist sponsorship would be limited to circumstances in which forfeiture of immunity under section 1605(a)(7) was foreseeable, such as where the terrorist activities *directly* targeted U.S. nationals -- that

approach does not address the issue that *Princz* said was the touchstone of section 1605(a)(1): whether the foreign state "actually indicated, even implicitly, a *willingness* to waive immunity." *See* 26 F.3d at 1174 (emphasis supplied). The allegation that Sudan and Iran proceeded with their terrorist sponsorship knowing that doing so might subject them to suits by U.S. nationals in U.S. courts (which is a questionable proposition insofar as the actions of Sudan and Iran preceded the 1996 amendment of the FSIA) is insufficient to support a finding that these nations willingly waived their immunity from suits by other individuals injured as a result of the same conduct. In sum, there simply is no basis for finding that either Sudan or Iran, by providing material support for terrorist groups that intended to target American citizens, "indicated its amenability to suit" by citizens of other nations in U.S. courts. *See id.* Thus, section 1605(a)(1) is inapplicable to the claims of the Kenyan citizens here.

\*     \*     \*

Even if the limited application of section 1605(a)(1) were not so clear, the text of the FSIA provides another reason for rejecting plaintiffs' suggestion that it applies to the claims of the Kenyan citizens in this case. Applying section 1605(a)(1) as plaintiffs suggest would eliminate a key part of the "delicate legislative compromise" reflected in section 1605(a)(7). *See Price*, 294 F.3d at 89. If this Court were to find an exception to sovereign immunity for the claims of the Kenyan citizens against Sudan and Iran based on a waiver implicit in sponsorship of terrorism that targets Americans, and thereby permit suits by non-U.S. nationals against foreign sovereigns for injuries caused by their support of terrorist activities, the Court would effectively read out of the FSIA a portion of the declination clause of section 1605(a)(7) -- that "the court shall decline to hear a claim under this paragraph ... if ... neither the claimant nor the victim was a national of the United States ... when the act upon which the claim is based occurred." 28 U.S.C. § 1605(a)(7).

*Abur*, 437 F. Supp.2d at 177-179.

The reasoned analysis and sound conclusions in *Abur* should be applied here. The

Plaintiffs' arguments and conclusory statements regarding the interplay between 1605(a)(7) and

1605(a)(1) are not supported by any authority, by any statutory language, or by the legislative

history.  Indeed, as Judge Bates recognized, when 1605(a)(7) was enacted in 1996, some 20 years after the enactment of 1605(a)(1), Congress could have amended, but importantly did not amend 1605(a)(1) and did not include language in 1605(a)(7) making it applicable to 1605(a)(1). The exceptions to sovereign immunity are distinct and unrelated.

Simply put, Section 1605(a)(7) has no applicability to the Plaintiffs' property damage claims.  The Plaintiffs admit, and it is unmistakably clear, that the Plaintiffs' property damage claims do not fall within any of the exceptions set forth in §§ 1605(a)(2) through (a)(7).  Not one of these provisions provide an exception to the immunity for the Plaintiffs' property damage claims against the Libya Defendants.  Moreover, the Plaintiffs have absolutely no factual support or legal support for their argument that the Libya Defendants have implicitly waived the immunity afforded them under the FSIA. *See Abur*.  Consequently, no exception to immunity applies to the Libya Defendants and they are thus immune from suit.

As this Circuit recognized in *Phoenix Consulting*, "if no exception applies, a foreign sovereign's immunity under the FSIA is complete:  the district court lacks subject matter jurisdiction over the plaintiff's case." *Phoenix Consulting,* 216 F.3d at 39.  Such is the case here.

### 2.    Section 1606 Does Not Apply to Immunity Exceptions.

Apparently recognizing that their argument based on 1605(a)(7) described above is baseless, the Plaintiffs also argue that Section 1606 of the FSIA somehow provides a pass-through of the exceptions to immunity set forth in other provisions of 1605.  The Plaintiffs argue that if an exception to immunity does not apply to a plaintiff's claims, then a plaintiff can use Section 1606 to piece together portions of any of the other exceptions to create a case-customized exception to sovereign immunity.  That is not how the statute is written and that is not how it should be interpreted.

Section 1606 has nothing to do with the exceptions to immunity in Section 1605. Section 1606 states in relevant part: "As to any **claim for relief** with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances, but a foreign state . . . shall not be liable for punitive damages; . . ." (emphasis added). The section acts as a pass through for **causes of action**. It does not serve as a pass through of exceptions to immunity. "There is a clean divide in the [FSIA] between the section that grants sovereign immunity (section 1604), the section that withdraws it for particular classes of cases (section 1605), and the section that defines the liability of a foreign state that has lost its immunity (section 1606)." *Dammarell v. Islamic Republic of Iran*, C.A. No. 01-2224, 2005 WL 756090, *12 (D.D.C. Mar. 29, 2005). Section 1606 does not apply to sovereign immunity.

Section 1606 plainly does not operate in the manner argued by the Plaintiffs. The provision does not permit a party to "pass through" an exception to immunity from one class of case to another.

### 3.    Foreseeability Does Not Constitute Implied Waiver of Immunity Under 1605(a)(1)

Plaintiffs pursue yet another argument in their attempt to create a completely new and customized exception to the Libya Defendants' sovereign immunity. The final argument advanced by the Plaintiffs, also wholly without support, is that the Libya Defendants should be deemed to have implicitly waived their immunity because it was "reasonably foreseeable" that their alleged support for terrorist activities would cause them to be haled into this Court. Throughout this section of their argument, the Plaintiffs again ignore the clear precedent of this Circuit. They attempt to clothe their argument as being based on some other tort concept when in actuality they are saying that a violation of *jus cogens* constitutes an implied waiver under

{J1066037.3}

13

1605(a)(1).  *See,* page 20 of Plaintiffs' Brief in Opposition, "but Congress had passed the state-sponsored terrorism exceptions to sovereign immunity, stripping the Libyan Defendants of their immunity based on their involvement and sponsorship of terrorism."  This bald conclusion is wholly without support in the statute and in case law.

The Plaintiffs continually attempt to manipulate a completely inapplicable exception to immunity found in section 1605(a)(7) so that, without satisfying any of the criteria set forth in 1605(a)(7), they can benefit from that exception to immunity.  If Congress had intended that result, Congress would have said so.  The statute is clear and does not operate in the manner argued by the Plaintiffs.

As discussed above, the Court in *Abur* rejected the same argument and declined to rewrite the current exceptions to sovereign immunity as requested by the plaintiffs.  Judge Bates reasoned:  "[a]lthough plaintiffs propose a narrow application of the implied-waiver exception -- whereby implied waiver by virtue of terrorist sponsorship would be limited to circumstances in which forfeiture of immunity under section 1605(a)(7) was foreseeable, such as where the terrorist activities *directly* targeted U.S. nationals -- that approach does not address the issue that *Princz* said was the touchstone of section 1605(a)(1):  whether the foreign state "actually indicated, even implicitly, a *willingness* to waive immunity. . . ."  In sum, there simply is no basis for finding that either Sudan or Iran, by providing material support for terrorist groups that intended to target American citizens, "indicated its amenability to suit" by citizens of other nations in U.S. courts."  *Abur*, 437 F. Supp.2d at 178 (internal citations omitted).

As discussed above and at length in *Abur*, if Congress intended to provide a relationship between the implied waiver exception to immunity found in Section 1605(a)(1) and the state sponsor of terrorism exception to immunity found in Section 1605(a)(7), it could have easily written the statute accordingly. It did not and this Court should decline to do so here.

The Libya Defendants have conclusively established that they enjoy sovereign immunity with respect to the claims in this case and that none of the exceptions to immunity found in the FSIA apply to the Plaintiffs' claims. The Amended Complaint should be dismissed.

**B.**    **The Plaintiffs' Claims Are Barred By the Statute of Limitations.**

As set forth above, the clear language of the FSIA and the case law interpreting Section 1605(a)(1) render the Libya Defendants immune from the claims in from the Plaintiffs' Amended Complaint. Even if this Court finds that the Libya Defendants are subject to suit, the Amended Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) based on the statute of limitations. As set forth more fully in the Motion to Dismiss, the Plaintiffs' 20-year-old property damage claims are time-barred and are not preserved by the application of principles of equitable tolling.

Plaintiffs maintain that the Libya Defendants are not protected by sovereign immunity because they **implicitly waived** immunity pursuant to 1605(a)(1). Given the reliance on that exception to sovereign immunity, which was enacted in 1976, the Plaintiffs could have brought their claims close to the date on which the cause of action arose, November 23, 1985. Instead, the Plaintiffs waited over 20 years to argue that the principles of equitable tolling permit them to file their claim in 2006. The principles of equitable tolling do not apply to the Plaintiffs' property damage claims which arose in 1985. The statute on which they rely, § 1605(f), relates only to claims brought pursuant to the exception of immunity under § 1605(a)(7). As discussed

at length above, and in the Libya Defendants' Motion to Dismiss, Section 1605(a)(7) and equitable tolling are not applicable and do not salvage the Plaintiffs' claims.

All of the Plaintiffs' 20-year-old property damage claims are time-barred. The Plaintiffs have not -- and cannot -- meet their burden that equitable tolling is applicable to their claims. As discussed in the Motion to Dismiss, either a ten-year or four-year statute of limitations governs the plaintiffs' claims. The ten-year statute of limitations began to run when the cause of action arose and the four-year statute began to run when the cause of action accrued. *See* Motion to Dismiss, pp. 11-14. Under all reasonable applications of the statutes of limitations, the ten-year period expired in 1995[2] and the four-year period expired at the latest in 1996.[3]

It is well-settled that the Plaintiffs bear the burden of proving that equitable tolling should apply. *See Arce v. Garcia*, 434 F.3d 1254 (11th Cir. 2006); *United States v. Saro*, 252 F.3d 449, 455 n. 7 (D.C. Cir. 2001). It is also well-settled that equitable tolling does not automatically extend the statute of limitations and even "where a plaintiff establishes circumstances justifying equitable tolling, the plaintiff is given extra time only if he needs it." *Vine v. Republic of Iraq*, 459 F. Supp.2d 10, *27 (D.D.C. 2006); *see also Phillips v. Heine*, 984 F.2d 489 (D.C. Cir. 1993).

Plaintiffs would have this Honorable Court insert into the FSIA words and meanings that Congress did not include or intend. The 1996 amendment to the FSIA, on which the Plaintiffs rely, added Section 1605(a)(7) providing a waiver of immunity for state sponsors of terrorism in claims for money damages arising out of personal injury to or death of United States citizens as a result of a terrorist act. Congress provided for a lengthy statute of limitations for claims under

---

[2] The ten-year period expired ten years after the cause of action arose. The cause of action arose on November 23, 1985.

[3] The four-year period expired four years after the 1992 enactment of the statute, so the period expired in 1996.

1605(a)(7) and expressly stated that equitable tolling principles apply. The language chosen by Congress is straightforward: "No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period." 28 U.S.C. § 1605(f).

Notably, Congress did not write the first sentence of Section 1605(f) to say what the Plaintiffs would like the statute to provide. Congress could have easily written that the action must be commenced not later than "10 years after the cause of action arose or 10 years after the enactment of this statute, whichever is later." This proposition is nowhere in the statute or the legislative history of the statute. Also telling is that Congress did not start the running of the statute of limitations when the "cause of action accrued." Instead, Congress states simply that the 10-year statute of limitations period begins to run when the cause of action arose and that principles of equitable tolling shall apply.

The terms "equitable tolling" and "principles of equitable tolling" have been used by courts, including the Supreme Court, to evaluate when a statute of limitations should be extended. The terms have consistently been used and interpreted in every Circuit to mean that a plaintiff may bring a late claim in extraordinary circumstances and when there are circumstances out of the plaintiff's control that prohibit it from filing suit.[4]

In 1990, six years before the enactment of Section 1605(a)(7), the Supreme Court discussed equitable tolling principles in the context of a claim against the Department of Veterans Affairs. "We think that this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990). The Court determined that equitable tolling should apply in cases against a sovereign, as it does for private litigants. It then described

---

[4]    *See e.g., Benitez-Pons v. Puerto Rico*, 136 F.3d 54, 61 (1st Cir. 1998) (discussed the following criteria for the application of equitable tolling: (1) the lack of actual notice of the filing requirement; (2) the lack of constructive notice of the filing requirement; (3) the diligence in pursuing one's rights; (4) the absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the filing requirement.); *de Casenave v. United States*, 91 F.2d 11 (1st Cir. 1993) (Quoting *Irwin*: "Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."); *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004) (Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing.); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (Equitable tolling applicable when defendant has actively misled the plaintiff respecting the plaintiff's cause of action, plaintiff in some extraordinary way has been prevented from asserting his or her rights, or where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Plaintiff must "exercise due diligence in preserving his claim." Equitable tolling is an extraordinary remedy which should be extended only sparingly.); *Johnson v. United States Postal Serv.*, 64 F.3d 233, 238 (6th Cir. 1995) (quoting *Irwin* for proposition that "equitable tolling was not appropriate where a litigant failed to meet a deadline as a result of 'garden variety' neglect."); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990): equitable tolling does not bring about an automatic extension of the statute of limitations; if tolling applies, it will only toll the statute for a reasonable time.); *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002) (Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling 'is an exception to the rule, and should therefore be used only in exceptional circumstances.); *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (Federal courts have applied the doctrine of equitable tolling in two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.); *Benge v. United States*, 17 F.3d 1286, 1288 (10th Cir. 1994) (Equitable tolling of a statute means only that the running of the statute is suspended, not that the limitations period begins over again.).

under what limited circumstances federal courts have applied equitable tolling to extend a statute of limitations. "We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, **or** where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* at 96 (emphasis added).

The plaintiff in *Irwin* had 30 days to file suit following the receipt of notification from the EEOC. The plaintiff's counsel's office received the notice, but counsel was out of the country. Counsel personally received the notification 15 days later. The complaint was filed 29 days after the counsel personally received the notification, but 44 days after the notice was received at his office. The Supreme Court determined that, although equitable tolling does apply in cases against the government, it was not justified in this case and the complaint was not timely filed. "[T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect." *Id.*

In that 1990 decision, the Supreme Court described principles of equitable tolling and the limited application of equitable tolling. In 1993, the District of Columbia Circuit similarly discussed equitable tolling principles and their limited application in *Phillips v. Heine*, 984 F.2d 489 (D.C. Cir. 1993). The *Phillips* decision, which is discussed at length in the Libya Defendants' Motion to Dismiss, described how courts in this Circuit should apply principles of equitable tolling. "[T]olling does not bring about an automatic extension of the statute of limitations by the length of the tolling period. It gives the plaintiff extra time **only** if he needs it. If the plaintiff doesn't need it there is no basis for depriving the defendant of the protection of the

statute of limitations, which after all exists to advance important interests in evidentiary accuracy and repose. **The purposes of the doctrine are fully achieved if the court extends the time for filing by a reasonable period after the tolling circumstance is mended.**" *Id.* at 492 (emphasis added).

*Irwin* and *Phillips* are still good law and are binding on this Court. Plaintiffs attempt to distinguish *Phillips* in two ways: (i) because it was decided before the enactment of Section 1605(a)(7) and (ii) because it was rendered in a case regarding the Death on the High Seas Act (DOHSA). Neither of these arguments is persuasive. On the contrary, the fact that *Irwin* and *Phillips* were decided before the enactment of § 1605(a)(7) shows that Congress was aware of the principles of equitable tolling as determined by two of the highest courts in this country.

It is without question that Congress was aware of the earlier cases, such as *Irwin* and *Phillips*, describing and carefully applying equitable tolling when it chose that language in its 1996 amendments to the FSIA. As described in the Libya Defendants' Motion to Dismiss, the legislative history of the TVPA confirms that plaintiffs are required to be diligent and gives no support for the Plaintiffs' position that Congress intended to broaden the reach of equitable tolling in FSIA cases. The fact that *Phillips* was decided in 1993 and in the context of a DOHSA case does not limit its applicability and does not alter the fact that it is binding on this Court on the issues of the meaning and application of the principles of equitable tolling. The *Phillips* decision was about equitable tolling, not policies related to the DOHSA. The Plaintiffs' request that this Court disregard all pre-1996 equitable tolling cases, including *Phillips*, because they fall before the enactment of § 1605(a)(7) is wholly without basis. The D.C. Circuit's sound analysis of equitable tolling was known by Congress in 1996 and applies to this case.

Plaintiffs argue that equitable tolling operates in this case to give them a period of 10 years from the date of the enactment of Section 1605(a)(7) to file their Complaint. There is no substantive support in any case or in the legislative history for the Plaintiffs' position that it has 10 years after the enactment of § 1605(a)(7) to file its claims. The Plaintiffs rely on a quote from *Flatow*, but fail to acknowledge that the issue of the statute of limitations was not raised and was not analyzed by that court. *See Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 23 (D.D.C. 1998). In fact, the *Flatow* complaint was filed just two years after the cause of action arose -- well within the statute of limitations. Therefore, the dicta without analysis in a case in which the statute of limitations was not even an issue should not be followed by this Court. If this Court is inclined to follow any of its sister Courts' decisions, it should follow the reasoned analysis in *Vine*, which followed the binding *Phillips* decision.

In *Vine*, the Court analyzed the very issue that is before this Court -- whether the doctrine of equitable tolling saves the complaint. Here, as in two of the three complaints in *Vine*, equitable tolling does not save the claims. In rejecting the argument of the plaintiffs in two of the complaints, the *Vine* court followed *Phillips*, held that the statute of limitations is not automatically extended and does not begin to run on the date of enactment of § 1605(a)(7).

The *Vine* court did not agree with the plaintiffs' argument that the statute of limitations was automatically extended, finding that the plaintiffs' arguments and authority were not persuasive:

> The [two groups of plaintiffs] cite a number of cases that assertedly stand for the proposition that Congress specifically allowed for the bringing of suits, absent tolling, up to ten years from the date of the enactment of the state sponsored terrorism exception, rather than ten years from the date the cause of action arose. The court notes that the overwhelming majority of the cases cited involve default judgments, for which any statute of

> limitations argument was necessarily waived. In only three of
> those cases was the statute of limitations even mentioned, and
> those references are dicta given the procedural posture of the case.
> In one of the two cases cited by plaintiffs that was not decided by
> default, the defendant failed to raise the statute of limitations
> defense and therefore waived it as well. Finally, in the sole
> disputed matter cited by plaintiffs in which the statute of
> limitations was raised, the court recognized that the statute of
> limitations began to run at the time the underlying acts occurred,
> but were tolled until immunity was waived.

459 F. Supp.2d 10, n. 9 (internal citations omitted.) The *Vine* court followed *Phillips* and held

that "the holding in *Phillips* -- that equitable tolling . . . merely ensures that the plaintiff is not, by

dint of circumstances beyond his control, deprived of a reasonable time in which to file suit."

459 F. Supp.2d at 34 (internal quotations omitted.)

As the *Vine* court recognized, **it is the law of this Circuit that equitable tolling will**

**only extend the limitations period for a reasonable period of time**. *See Phillips*, 984 F.2d at

492. Had Congress intended a different result, it could have easily said so.

The burden of demonstrating that a time period extended by equitable tolling is

reasonable falls squarely on the shoulders of the party seeking the extension. *Irwin*, 498 U.S. at

96. Plaintiffs cannot meet their burden. Indeed, the Plaintiffs attempt to convince this Court that

there is an automatic ten year extension from the enactment of Section 1605(a)(7) because they

cannot meet their burden of showing reasonableness.

The Plaintiffs have not and cannot present facts that demonstrate that ten years from the

enactment of § 1605(a)(7) is a reasonable time for them to file suit. In their Amended Complaint

and in their Brief in Opposition, Plaintiffs admit that they had access to information and facts to

support their claims as early as 1986 -- when the terrorist who participated in the hijacking was

tried in Malta. *See* Brief in Opp., p. 12. In addition, the exhibits submitted by the Plaintiffs with

their Brief in Opposition demonstrate that information was available well before the enactment

of § 1605(a)(7). If, as Plaintiffs incorrectly argue, they could not file this case until after § 1605(a)(7) was enacted, then they could have done so shortly thereafter and well before ten years elapsed.

Notably, Plaintiffs make no argument about why they had to wait until April 21, 2006 -- just three days before the ten-year anniversary of the enactment of § 1605(a)(7) -- to file their Complaint. There is absolutely no factual support or even argument presented by the Plaintiffs that ten years after the enactment of § 1605(a)(7), and 20 years after the cause of action arose, is a **reasonable time** to bring the claims. Instead, Plaintiffs rely only on their mistaken belief that the statute of limitations is automatically extended by equitable tolling for ten years after the date of enactment. As support for this faulty proposition, the Plaintiffs -- like the unsuccessful plaintiffs in *Vine* -- rely on dicta from a sister District Court and ignore the binding precedent governing the application of equitable tolling in this Circuit.

In this Circuit, it is the Plaintiffs' burden to show that equitable tolling applies and that the time period was reasonable. Plaintiffs have completely failed to meet their burden. Moreover, Plaintiffs cannot meet their burden because there is no set of facts that would support the position that ten years after the enactment of § 1605(a)(7) -- a statute that does not even apply to the claims in this case -- is a reasonable time. Therefore, all of the Plaintiffs' claims are time-barred and the Libya Defendants' Motion to Dismiss should be granted.

### C.    Plaintiffs Did Not Properly Serve the Individual Defendants.

The Plaintiffs argue that they properly served all of the Libya Defendants pursuant to § 1608(a)(3). (Brief in Opp., pp. 35-37.) The Libya Defendants do not agree and reassert the argument raised in the Motion to Dismiss. Moreover, service pursuant to § 1608(a)(3) does not satisfy the Plaintiffs' burden of establishing proper service on the individual Libya Defendants.

{J1066037.3}

The clear language of the statute mandates that the individual Libya Defendants be served pursuant to § 1608(b) because the individual defendants are considered agencies or instrumentalities of the foreign state. *See Jungquist v. Sheekh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997); *Global Index, Inc. v. Mkapa*, 290 F. Supp.2d 108, 110 (D.D.C. 2003) (individuals who act in their official capacities on behalf of a foreign sovereign are considered agencies and instrumentalities of a foreign state.).   Thus, the service requirements of 28 U.S.C. § 1608(b) apply to them and service upon them may only be accomplished pursuant to that provision.

The Plaintiffs assert that service upon all of the Libya Defendants was completed under 28 U.S.C. § 1608(a)(3) by delivery of the requisite documents for each defendant to the Libyan ministry of foreign affairs.   While service in this manner may arguably be proper upon Libya, it is not proper service upon the individual Libya Defendants, Mu'ammar al-Qadhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.   There is no evidence in the record of this case that service was accomplished pursuant to any of the provisions of § 1608(b).   Indeed, the Plaintiffs admit that they only served pursuant to § 1608(a)(3).   Therefore, the Plaintiffs have failed to meet their burden that they have properly served the individual Libya Defendants.

**D.    All Other Arguments in the Motion to Dismiss Are Incorporated.**

The Libya Defendants incorporate and restate as if fully rewritten all of the arguments presented in their Motion to Dismiss.

IV.    **CONCLUSION**

For the foregoing reasons, and for all of the reasons set forth in the Motion to Dismiss,

the Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

**ECKERT SEAMANS CHERIN &
MELLOTT, LLC**

/s/ Wendy West Feinstein
Thomas J. Whalen (Bar No. 208512)
Mark A. Johnston (Bar No. 455764)
1747 Pennsylvania Ave., N.W.
Twelfth Floor
Washington, DC  20006
(202) 659-6600

Wendy West Feinstein (Pa. ID No. 86698)
(Admitted *Pro Hac Vice*)
U.S. Steel Tower, 44th Floor
600 Grant Street
Pittsburgh, PA  15219
(412) 566-6000

Counsel for Great Socialist People's Libyan Arab
Jamahiriya a/k/a LIBYA, Libyan Internal Security
a/k/a al-'Amn al-Dhakhili, Libyan External Security
a/k/a al-'Amn al-Khariji, Mu'ammar al-Qadhafi,
Major Abdallah al-Sanusi, and Ibrahaim al-Bishari

Dated:  March 2, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Reply Brief in Support of Defendants'

Motion to Dismiss Amended Complaint has been electronically filed and served upon the

following counsel of record this 2nd day of March, 2007.

Richard D. Heideman, Esq.
Noel J. Nudelman, Esq.
Tracy Reichman Kalik, Esq.
Heideman Nudelman & Kalik, PC
1146 19th Street, 5th Floor
Washington, DC 20036

Steven R. Perles, Esq.
Edward MacAllister, Esq.
Perles Law Firm, PC
1146 19th Street, 5th Floor
Washington, DC 20036



/s/ Wendy West Feinstein
Counsel for Libya Defendants