UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS LONDON, <u>et al</u>., <br><br> Plaintiffs, <br><br> v. <br><br> GREAT SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, <u>et al</u>., <br><br> Defendants. | Civil Action No. 06-731 (GK) |

<u>MEMORANDUM OPINION</u>

Egypt Air Flight 648, a Boeing 737 airliner, was hijacked by Palestinian terrorists on November 23, 1985.  The aircraft was completely destroyed the following day after Egyptian Army commandos attempted a rescue mission.  Plaintiffs, insurers that compensated Egypt Air for the loss of the aircraft, bring conversion, trespass, air piracy, and Anti Terrorism Act claims for loss of the aircraft against the governments of Libya and Syria; against three Libyan and Syrian intelligence agencies: Libyan Internal Security, Libyan External Security, and Syrian Air Force Intelligence; and against the following individuals: Mu'ammar al-Qadhafi, Libya's head of state, Major Abdallah al-Sanusi, Chief of Libyan Internal Security, Ibrahim al-Bishari, Chief of Libyan

External Security, and General Muhammed Al Khuli, Chief of Syrian Air Force Intelligence.[1]

This matter is before the Court on the Motion of Defendants Libya, Libyan Internal Security, Libyan External Security, al-Qadhafi, al-Sanusi, and al-Bishari (hereinafter referred to as "Libya") to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [**Dkt. No. 32**]. Upon consideration of the Motion, Opposition, Reply, the parties' arguments at the motions hearing held before the Court on June 12, 2007, and the entire record herein, and for the reasons stated below, Defendants' Motion to Dismiss is **granted.**

I.   **BACKGROUND**[2]

Egypt Air Flight 648 was scheduled to fly from Athens, Greece to Cairo, Egypt on November 23, 1985.[3] The aircraft, a Boeing 737,

---

[1] The Clerk entered a default judgment against Defendants Syria, Syrian Air Force Intelligence, and General Al Khuli on October 4, 2006. [Dkts. 21, 22, and 23].

[2] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from Plaintiffs' Amended Complaint.

[3] For a more complete description of the underlying facts, see Baker v. Great Socialist People's Libyan Arab Jamahiriya, No. 03-749, 2006 WL 3208662 (D.D.C. Nov. 7, 2006).

was highjacked by terrorists associated with the Abu Nidal Organization approximately twenty minutes after takeoff. The aircraft was diverted to Malta, where the local authorities denied the hijackers' demands that the airplane be refueled. A tense standoff ensued and the terrorists shot a number of hostages. After approximately twenty-four hours, commandos from the Egyptian Army launched a rescue operation. The commandos used explosives to blow open passenger and cargo doors in order to gain access to the interior of the aircraft. The use of these explosives, along with grenades thrown by the hijackers into the passenger cabin in response, led to a fire that caused the complete destruction of the aircraft. Libya allegedly provided material support for this terrorist attack.

## II.  STANDARD OF REVIEW

In challenging a court's subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), the defendant bears the burden of establishing that none of the exceptions to sovereign immunity under the FSIA apply. Princz v. Fed. Republic of Germany, 26 F.3d 1166, 1171 (D.C. Cir. 1994). "If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the

plaintiff." <u>Phoenix Consulting, Inc. v. Republic of Angola</u>, 216 F.3d 36, 40 (D.C. Cir. 2000).

### III. THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

Foreign states are generally immune from suit in the United States unless one of the exceptions of the FSIA applies. 28 U.S.C. § 1604; <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 439 (1989).

A foreign state may explicitly or implicitly waive its immunity. The parties agree that Libya has not explicitly waived its sovereign immunity under any of the exceptions to the FSIA. <u>See</u> 28 U.S.C. § 1605(a)(1)-(a)(7).

Instead, Plaintiffs argue that Libya has implicitly waived its sovereign immunity. 28 U.S.C. § 1605(a)(1). In essence, they contend that state support for a terrorist act that caused personal injury and death, and thus, is an explicit waiver of immunity under 28 U.S.C. § 1605(a)(7), also constitutes an implied waiver when that act of terrorism results in property damage. Having engaged in conduct that is not immune under the FSIA, Plaintiffs argue that Libya could reasonably expect to be called to account for its actions in a United States court.

The implied waiver exception contained in Section 1605(a)(1) is to be construed narrowly.[4] <u>Creighton Ltd. v. Gov't of the State</u>

---

[4] 28 U.S.C. § 1605(a)(1) provides that a foreign state shall (continued...)

4

of Qatar, 181 F.3d 118, 122 (D.C. Cir. 1999).  Our Court of Appeals

made it clear, in Princz, that an implied waiver requires a foreign

---

[4](...continued)
not have sovereign immunity where the "foreign state has waived its
immunity either explicitly or by implication, notwithstanding any
withdrawal of the waiver which the foreign state may purport to
effect except in accordance with the terms of the waiver."

28 U.S.C. § 1605(a)(7) provides for a waiver of sovereign
immunity for a case:

> ...in which money damages are sought against a foreign
> state for personal injury or death that was caused by an
> act of torture, extrajudicial killing, aircraft sabotage,
> hostage taking, or the provision of material support or
> resources (as defined in section 2339A of title 18) for
> such an act if such act or provision of material support
> is engaged in by an official, employee, or agent of such
> foreign state while acting within the scope of his or her
> office, employment, or agency, except that the court
> shall decline to hear a claim under this paragraph--
>
> > (A) if the foreign state was not designated as a
> > state sponsor of terrorism under section 6(j) of
> > the Export Administration Act of 1979 (50 U.S.C.
> > App. 2405(j)) or section 620A of the Foreign
> > Assistance Act of 1961 (22 U.S.C. 2371) at the time
> > the act occurred, unless later so designated as a
> > result of such act...; and
> >
> > (B) even if the foreign state is or was so
> > designated, if--
> >
> > > (1) the act occurred in the foreign state
> > > against which the claim has been brought and
> > > the claimant has not afforded the foreign
> > > state a reasonable opportunity to arbitrate
> > > the claim in accordance with accepted
> > > international rules of arbitration; or
> > >
> > > (2) neither the claimant nor the victim was a
> > > national of the United States (as that term is
> > > defined in section 101(a)(22) of the
> > > Immigration and Nationality Act) when the act
> > > upon which the claim is based occurred.

government to have previously "indicated its amenability to suit" because Section 1605(a)(1) contains an implicit intentionality requirement.  <u>Princz</u>, 26 F.3d at 1174.

The legislative history of Section 1605(a)(1) provides three examples of how a foreign state can impliedly waive its sovereign immunity: (1) by agreeing to arbitrate a dispute; (2) by agreeing to have a contract governed by another state's substantive law; or (3) by filing a responsive pleading without raising the defense of sovereign immunity.  <u>Id</u>.  In each case, the foreign nation can be said to have willingly consented to the exercise of jurisdiction by another nation's courts.  The "'courts have been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity.'"  <u>Id</u>. (citing <u>Frolova v. Union of Soviet Socialist Republics</u>, 761 F.2d 370, 377 (7th Cir. 1985).

Our Court of Appeals has previously rejected plaintiffs' argument that a violation of <u>jus cogens</u> norms[5] would constitute an implied waiver.  <u>Princz</u>, 26 F.3d at 1174; <u>Hwang Geum Joo v. Japan</u>, 332 F.3d 679, 686-87 (D.C. Cir. 2003), <u>cert</u>. <u>granted and judgment vacated on other grounds</u>, 542 U.S. 901 (2004).  Although Plaintiffs

---

[5] "A <u>jus cogens</u> norm is a principle of international law that 'is accepted by the international community of States as a whole as a norm from which no derogation is permitted....'"  <u>Princz</u>, 26 F.3d at 1173 (quoting <u>Comm. of U.S. Citizens in Nicaragua v. Reagan</u>, 859 F.2d 929, 940 (D.C. Cir. 1988)).  For example, a state violates <u>jus cogens</u> norms if it practices or condones genocide, slavery, or torture.  <u>Id</u>.

do not repeat the precise arguments advanced in <u>Princz</u> and <u>Hwang</u> <u>Geum Joo</u>, "the fundamental premise" of <u>Princz</u>, "that a court cannot create a new exception to the general rule of immunity under the guise of an implied waiver," <u>Hwang Geum Joo</u>, 332 F.3d at 687 (internal quotation marks omitted), is fatal to their theory of implied waiver.

Two recent decisions by other judges of this Court have considered and rejected similar implied waiver arguments.

In <u>Abur v. Republic of Sudan</u>, 437 F. Supp. 2d 166 (D.D.C. 2006), most of the plaintiffs were non-United States nationals who were injured or killed in the 1998 bombings of the United States embassies in Kenya and Tanzania. Because plaintiffs did not satisfy the requirement in Section 1605(a)(7) that they be United States nationals, they argued that defendants Sudan and Iran implicitly waived immunity as to all plaintiffs because Sudan and Iran should have anticipated being sued in United States courts for their role in the bombings. <u>Id</u>. at 177.

Judge John D. Bates rejected this theory of implied waiver for two reasons. First, it was inconsistent with the general rule that implied waiver under Section 1605(a)(1) is to be construed narrowly. <u>Id</u>. There was no indication, as required by <u>Princz</u>, that Sudan and Iran were willing to be subjected to suit in the United States. <u>Id</u>. at 178.

7

Second, "[a]pplying section 1605(a)(1) as plaintiffs suggest would eliminate a key part of the delicate legislative compromise reflected in section 1605(a)(7)." Id. at 179 (internal quotation marks omitted). Had Congress intended the result that the plaintiffs in Abur urged, the court found, it could have done so by changing a single word in Section 1605(a)(7) to allow non-United States nationals to bring their claims alongside United States nationals. Id.

Similarly, in La Réunion Aérienne v. Socialist People's Libyan Arab Jamahiriya, 477 F. Supp. 2d 131 (D.D.C. 2007), the insurer of an aircraft destroyed by an act of terrorism argued that Congress intended to provide supplemental jurisdiction under Section 1605(a)(7) for property damage claims when acts of terrorism that resulted in personal injury and death to American nationals also caused the property damage in question. Judge Henry H. Kennedy, Jr. disagreed, holding that Congress did not intend to provide recovery for property damage claims under Section 1605(a)(7). Id. at 137. In his view, the legislative history indicated that Congress was "focused solely on claims for wrongful death and personal injury." Id at 138.

The rationales set forth in Abur and La Réunion Aérienne are compelling and lead to the rejection of Plaintiffs' implied waiver argument. Under Section 1605(a)(1), implied waiver is to be construed narrowly, and only applied in cases where a foreign

8

sovereign has willingly subjected itself to suit, such as where it agrees to be bound by arbitration or fails to raise the defense of sovereign immunity. <u>Princz</u>, 26 F.3d at 1174. Here, Libya has not demonstrated any amenability to suit, and Plaintiffs' theory of implied waiver is far afield from the narrow range of traditionally accepted examples of implied waiver. <u>See id</u>.

Accepting Plaintiffs' theory would also effectively amend the FSIA to permit claims for property damage resulting from acts of state supported terrorism. However, there is no indication that Congress intended to provide recovery for such claims. <u>La Réunion Aérienne</u>, 477 F. Supp. 2d at 137-38. The courts may not "create a new exception to the general rule of immunity under the guise of an implied waiver." <u>Hwang Geum Joo</u>, 332 F.3d at 687. As Judge Bates noted, only Congress has the power to alter "the delicate legislative compromise reflected in section 1605(a)(7)." <u>Abur</u>, 437 F. Supp. 2d at 179 (internal quotation marks omitted).

Because this case does not fall within any of the exceptions set out in the FSIA, Libya is immune from suit. <u>See</u> 28 U.S.C. § 1604; <u>Amerada Hess</u>, 488 U.S. at 139. The case must therefore be dismissed for lack of subject matter jurisdiction.

9

## IV.   CONCLUSION

For the foregoing reasons, Libya's Motion to Dismiss [**Dkt. No. 32**] is **granted** for lack of subject matter jurisdiction.  An order shall issue with this Memorandum Opinion.


July 9, 2007                            /s/_____
                                        Gladys Kessler
                                        United States District Judge


**Copies to: Attorneys of record via ECF**

10