Westlaw.

--- F.3d ----
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)
**(Cite as: --- F.3d ----, 2008 WL 2497417 (C.A.D.C.))**

**H**
Simon v. Republic of Iraq
C.A.D.C.,2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,District of
Columbia Circuit.
Robert **SIMON**, et al., Appellants
v.
REPUBLIC OF IRAQ, et al., Appellees.
**Nos. 06-7175, 06-7178.**

Argued Oct. 12, 2007.
Decided June 24, 2008.

**Background:** American citizens who allegedly
were tortured and/or held hostage in Kuwait and Ir-
aq during Gulf War brought personal injury actions
against the Republic of Iraq and related entities,
and citizens' family members asserted claims for in-
tentional infliction of emotional distress. The
United States District Court for the District of
Columbia, 459 F.Supp.2d 10, dismissed consolid-
ated actions as untimely. Citizens appealed.

**Holdings:** The Court of Appeals, Ginsburg, Circuit
Judge, held that:
(1) courts retained jurisdiction over cases that were
pending pursuant to statutory exception in Foreign
Sovereign Immunities Act (FSIA) allowing for law-
suits against state sponsors of terrorism when Con-
gress enacted National Defense Authorization Act
(NDAA);
(2) actions were timely; and
(3) political question doctrine did not apply to bar
claims.

Reversed and remanded.

**[1] Federal Courts 170B $\mathref{\LARGE\leftarrow}$ 0**

170B Federal Courts
Statute removing federal jurisdiction presumptively
applies to pending cases, inasmuch as such a statute
usually takes away no substantive right, but simply
changes the tribunal that is to hear the case.

**[2] Statutes 361 $\mathref{\LARGE\leftarrow}$ 0**

361 Statutes
Statute that retroactively alters the consequences of
primary conduct, as by impairing rights a party pos-
sessed when he acted, increasing a party's liability
for past conduct, or imposing new duties with re-
spect to transactions already completed, is pre-
sumptively non-retroactive, and such a statute ap-
plies to a pending case only if the Congress clearly
so provides.

**[3] International Law 221 $\mathref{\LARGE\leftarrow}$ 0**

221 International Law
Courts retained jurisdiction over cases that were
pending against Iraq pursuant to statutory exception
in Foreign Sovereign Immunities Act (FSIA) allow-
ing for lawsuits against state sponsors of terrorism
at the time Congress enacted National Defense Au-
thorization Act (NDAA), given that NDAA, while
repealing existing terrorism exception and adding
new exception which gave the President authority
to waive exception as to Iraq, which he exercised,
provided for amendments to apply only to claims
under new exception, and recognized court author-
ity to enter judgments on the merits in pending ac-
tions brought under repealed exception. 28
U.S.C.A. § 1605A; 28 U.S.C.A. § 1605(a)(7)
(repealed).

**[4] Federal Courts 170B $\mathref{\LARGE\leftarrow}$ 0**

170B Federal Courts
Courts have no jurisdiction of a case against a for-
eign sovereign absent an exception to the grant of
immunity in the Foreign Sovereign Immunities Act
(FSIA). 28 U.S.C.A. § 1602 et seq.

**[5] International Law 221 $\mathref{\LARGE\leftarrow}$ 0**

221 International Law
Statute extended limitations period for bringing ac-
tion pursuant to exception in Foreign Sovereign Im-
munities Act (FSIA) allowing for lawsuits against

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

state sponsors of terrorism with respect to time period in which Iraq was immune from suit, and therefore actions brought by American citizens who allegedly were tortured and/or held hostage in Kuwait and Iraq during Gulf War were timely, based upon Iraq's immunity during time period between conduct underlying claims and amendment of FSIA to add terrorism exception. 28 U.S.C.A. § 1605(a)(7) (repealed); 28 U.S.C.A. § 1605(f).

**[6] Constitutional Law 92 ☞0**

92 Constitutional Law
Adjudicating question of whether Iraq committed acts of torture and hostage-taking against American citizens during Gulf War did not require courts to address any question committed by United States Constitution to political branches, and therefore political question doctrine did not apply to bar citizens' personal injury claims under terrorism exception to Foreign Sovereign Immunities Act (FSIA), notwithstanding the President's position that threat of monetary judgment against Iraq contravened United States foreign policy and contention that actions could affect United States foreign relations; rather, courts had duty to proceed to the extent actions were justiciable. 28 U.S.C.A. § 1605(a)(7) (repealed).

**[7] Constitutional Law 92 ☞0**

92 Constitutional Law
Federal courts may not pass upon a question the United States Constitution commits to the political branches.

**[8] Constitutional Law 92 ☞0**

92 Constitutional Law
Political question doctrine does not call upon federal courts to decide whether a lawsuit that raises only justiciable questions contravenes the foreign policy of the United States; if the political branches decide tort suits against a foreign sovereign are contrary to the foreign policy of the Nation, then they may by law remove them from courts' jurisdic-

tion.

Appeals from the United States District Court for the District of Columbia (Nos.03cv00691, 03cv00888).
Michael Rips argued the cause for appellants. With him on the briefs were Stephen A. Fennell, Anthony F. Cavanaugh, Anthony A. Onorato, Justin B. Perri, and Alice Loughran.
Eric J. Hecker, Richard D. Emery, and Sarah Netburn were on the brief for amici curiae Ethel Hurst, et al. in support of appellants.
Lawrence H. Martin argued the cause for appellees. With him on the briefs were Gare A. Smith, Sarah A. Altschuller, Timothy B. Mills, and Jonathan S. Franklin.

Before SENTELLE, Chief Judge, and GINSBURG and BROWN, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:
**\*1** The plaintiffs in these two consolidated actions sued Iraq, the Iraqi Intelligence Service, and Saddam Hussein (together, Iraq) alleging they had tortured and taken certain of them hostage during the 1990-91 Gulf War. The plaintiffs relied upon 28 U.S.C. § 1605(a)(7), the exception in the Foreign Sovereign Immunities Act (FSIA), § 1602 *et seq.*, that allowed for lawsuits against state sponsors of terrorism. The district court dismissed the actions as untimely and the plaintiffs appealed. Iraq defends the district court's interpretation of the time limitation in the FSIA and alternatively invokes the political question doctrine.

After this appeal was briefed and argued, the Congress passed the National Defense Authorization Act for Fiscal Year 2008 (NDAA), Pub.L. No. 110-181, 122 Stat. 3, § 1083 of which revised the terrorism exception to sovereign immunity by repealing § 1605(a)(7) of Title 28 and adding a new exception to be codified at § 1605A of Title 28.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)
**(Cite as: --- F.3d ----, 2008 WL 2497417 (C.A.D.C.))**

Section 1083(d) of the NDAA granted the President the authority to waive § 1083 with respect to Iraq, which he promptly did.

For the reasons that follow, we conclude the plaintiffs may maintain these suits pursuant to § 1605(a)(7), and their cases are timely and justiciable. Accordingly, we remand these matters to the district court for further proceedings.

3

### I. Background

In 1996 the Congress amended the FSIA to abrogate in certain respects the sovereign immunity of any foreign state the Secretary of State designates a sponsor of terrorism. Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, § 221, 110 Stat. 1214, 1241-43 (codified at 28 U.S.C. § 1605(a)(7)); *see also* 28 U.S.C. § 1604 (granting immunity to foreign states, their agencies, and their instrumentalities). As amended, § 1605(a)(7) provided in part that a foreign state was not immune from an action for damages "for personal injury ... caused by an act of torture ... [or] hostage taking" to a U.S. national if the foreign state had been "designated as a state sponsor of terrorism ... at the time the act occurred" and the plaintiff had given the foreign state "a reasonable opportunity to arbitrate the claim."The statute defined torture and hostage taking, *see* §§ 1605(e), 1350 note, by reference to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment art. 1(1), Dec. 10, 1984, 1465 U.N.T. S. 85, and the International Convention Against the Taking of Hostages art. 1, Dec. 17, 1979, T.I .A.S. No. 11081, 1316 U.N.T. S. 205.

The plaintiffs filed their actions in 2003 and duly invoked § 1605(a)(7). Their amended complaints alleged that in 1990 and 1991 the defendants had tortured certain of the plaintiffs and held them hostage, in violation of local, federal, and international law; the other plaintiffs, members of the alleged victims' families, sued for intentional infliction of emotional distress. Iraq was at all relevant times a designated state sponsor of terrorism, 55 Fed.Reg. 37,793 (Sept. 13, 1990), and the complaints alleged the plaintiffs had offered Iraq the opportunity to arbitrate the disputes.

*2 Iraq and the Iraqi Intelligence Service filed motions to dismiss both cases on the grounds that the actions were untimely under § 1605(f), which provides a limitation period of ten years for any action under § 1605(a)(7); the plaintiffs had failed to state a claim upon which relief could be granted; and the political question doctrine barred the court from proceeding. The district court held the two actions did not raise political questions but dismissed them as untimely. *Vine v. Republic of Iraq,* 459 F.Supp.2d 10 (2006).

### II. Analysis

On appeal, Iraq newly contends the recent enactment of the NDAA and the President's waiver of § 1083 thereof require the dismissal of these cases. Alternatively, Iraq argues the cases were untimely filed and are barred by the political question doctrine. Addressing the issues of law *de novo,* we reject each of Iraq's contentions.

### A. NDAA 2008

On December 14, 2007 the Congress passed the first version of the NDAA, § 1083 of which would have amended the terrorism exception to foreign sovereign immunity by striking 28 U.S.C. § 1605(a)(7), the exception upon which the plaintiffs relied, and enacting a new exception, to be codified at 28 U.S.C. § 1605A. President Bush sought to "pocket veto" the bill because he believed § 1083 would threaten the reconstruction of Iraq:

[S]ection 1083 would risk the freezing of substantial Iraqi assets in the United States.... Section 1083 also would expose Iraq to new liability

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)
(Cite as: --- F.3d ----, 2008 WL 2497417 (C.A.D.C.))

of at least several billion dollars by undoing judgments favorable to Iraq, by foreclosing available defenses on which Iraq is relying in pending litigation, and by creating a new Federal cause of action backed by the prospect of punitive damages to support claims that may previously have been foreclosed.

Memorandum of Disapproval, 43 WEEKLY COMP. PRES. DOC.. 1641, 1641 (Dec. 28, 2007).

The Congress subsequently passed a revised version of the NDAA, which included a new provision (§ 1083(d)) that authorized the President, upon making certain findings, to "waive any provision of [§ 1083 of the NDAA] with respect to Iraq."The President signed that bill into law and promptly exercised his authority under § 1083(d)(1) to waive "all provisions of section 1083 with respect to Iraq, and all agencies and instrumentalities thereof."Presidential Determination No.2008-9, 73 Fed.Reg. 6571 (Jan. 28, 2008).FN* Iraq contends the enactment of the NDAA and the President's waiver of § 1083 with respect to Iraq stripped the federal courts of jurisdiction over these cases; the plaintiffs disagree, of course.

Section 1083(a) of the NDAA, which amended the FSIA by creating new § 1605A of Title 28, contains an exception to the grant of sovereign immunity similar to that in former § 1605(a)(7) but more advantageous to plaintiffs in several respects. For instance, it precludes a foreign state from filing an interlocutory appeal under the "collateral order" doctrine, § 1605A(f), and permits a plaintiff to attach property in advance of judgment, § 1605A(g). In addition, § 1605A(c) abrogates *Cicippio-Puleo v. Islamic Republic of Iran,* 353 F.3d 1024 (D.C.Cir.2004), by creating a federal right of action against foreign states, for which punitive damages may be awarded.

**\*3** Iraq argues that because § 1083(b)(1) of the NDAA repeals § 1605(a)(7) of the FSIA, upon which the present cases were founded, we must dismiss these cases for want of jurisdiction. *see*28

U.S.C. §§ 1330(a), 1604 (jurisdiction over case against foreign sovereign depends upon exception to immunity). Further, according to Iraq, the President's waiver of § 1083 of the NDAA prevents the plaintiffs from refiling their cases under the jurisdiction conferred by new § 1605A.

**[1][2]** A statute removing federal jurisdiction presumptively applies to pending cases because such a statute "usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' " *Hamdan v. Rumsfeld,* 548 U.S. 557, 126 S.Ct. 2749, 2765, 165 L.Ed.2d 723 (2006) (quoting *Hallowell v. Commons,* 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409 (1916)); *see also Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 951, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). In contrast, a statute that retroactively alters the consequences of primary conduct-as by "impair[ing] rights a party possessed when he acted, increas[ing] a party's liability for past conduct, or impos[ing] new duties with respect to transactions already completed," *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)-is presumptively nonretroactive; such a statute applies to a pending case only if the Congress clearly so provides.

**[3]** The FSIA speaks to the jurisdiction of the federal courts, but it also governs the immunity of foreign states in any U.S. forum. *see*28 U.S.C. § 1604 ("a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter"); *cf. Hughes Aircraft Co.,* 520 U.S. at 951 ("statutes affect[ing] ...*whether* [a suit] may be brought at all ... speak [ ] not just to the power of a particular court but to the substantive rights of the parties as well" and are therefore "subject to [the] presumption against retroactivity"). Accordingly, it is not clear which presumption might apply, if any is needed. In this case, however, it is unnecessary to invoke either presumption because § 1083 makes several references to pending cases and we need not look beyond the text and structure of the NDAA to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)
(Cite as: --- F.3d ----, 2008 WL 2497417 (C.A.D.C.))

ascertain its effect upon cases brought under § 1605(a)(7).*Accord Hamdan*, 126 S.Ct. at 2762-69 (holding, based upon "[o]rdinary principles of statutory construction," the provision of the Detainee Treatment Act of 2005, Pub.L. No. 109-148, Title X, 119 Stat. 2680, 2739-44, that deprived the courts of jurisdiction over habeas petitions filed by persons detained at Guantánamo Bay did not apply to habeas cases pending when it was enacted). For the reasons that follow, we conclude that the courts retained jurisdiction over cases pending pursuant to former § 1605(a)(7) when the Congress enacted the NDAA. *Cf. Republic of Austria v. Altmann*, 541 U.S. 677, 697-700, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (applying ordinary principles of construction to decide whether FSIA, which codified immunity of foreign sovereigns, applies to conduct predating statute).

*4 We note first that the new terrorism exception in § 1605A by its terms does not provide a substitute basis for jurisdiction over all cases pending under § 1605(a)(7) when § 1605A replaced it. The new provision deprives a foreign sovereign of immunity to suit only if

(I) the foreign state was designated as a state sponsor of terrorism at the time the act [giving rise to the suit] occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section; or

(II) in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the [NDAA for] 2008 or is filed under this section by reason of section 1083(c)(3) of that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7) (as in effect before the enactment of this section) ... was filed.

28 U.S.C. § 1605A(a)(2)(A)(i). Inasmuch as this

provision expressly distinguishes between cases "filed under this section"-*i.e.*,§ 1605A-and cases "filed under section 1605(a)(7)" of the pre-amendment Act, a pending case obviously cannot be said to have been "filed under" the new provision. Therefore, the plaintiff in a case pending under § 1605(a)(7) may not maintain that action based upon the jurisdiction conferred by § 1605A; in order to claim the benefits of § 1605A, the plaintiff must file a new action under that new provision.

[4] Because the courts have no jurisdiction of a case against a foreign sovereign absent an exception to the grant of immunity in the FSIA, and because § 1605A does not provide that exception for pending cases, Iraq contends the NDAA requires the dismissal of these cases. The plaintiffs, on the other hand, argue that § 1605(a)(7) remains a viable exception to immunity for cases, such as these, filed when it was the source of our jurisdiction. Based upon the following analysis of NDAA §§ 1083(c) ("Application to Pending Cases") and 1083(d) ("Applicability to Iraq"), we hold the courts retain jurisdiction pursuant to § 1605(a)(7) over cases that were pending under that section when the Congress enacted the NDAA.

*Section 1083(c)(1).* The first subsection of § 1083(c) provides: "The amendments made by this section [1083] shall apply to any claim arising under section 1605A."Because, as we have said, a claim pending under former § 1605(a)(7) when the NDAA became law did not "aris[e] under section 1605A," *cf. Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action"), it is apparent that the 2008 amendments, including the "conforming amendments" that strike former § 1605(a)(7), *see* NDAA § 1083(b), do not apply to any claim then "pending" under that provision. Moreover, reading the Act to extinguish jurisdiction over cases pending under § 1605(a)(7) when the NDAA became law would render § 1083(c)(1) nugatory: There would be no need to specify "the amend-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ments ... apply to any claim arising under section 1605A" for the amendments obviously would apply to any such claim and could apply to no other claim; as we interpret it, however, § 1083(c)(1) makes clear the "amendments" apply to any claim under § 1605A, but to no "pending" claims.[FN*]

**\*5** *Sections 1083(c)(2) and (c)(3).* Plaintiffs with "pending cases" may invoke new § 1605A in certain circumstances. Pursuant to § 1083(c)(2) ( "Prior Actions"), a plaintiff who detrimentally "relied upon" former § 1605(a)(7) of the FSIA "as creating a cause of action" and whose action was "pending before the courts in any form" when the NDAA became law was given 60 days within which to "refile" his suit based upon the new cause of action created by § 1605A(c).*See also*28 U.S.C. § 1605A(a)(2)(A)(i)(II) (providing exception to immunity for "original action" that is "refiled ... by reason of section 1083(c)(2)(A)"). Section 1083(c)(3) of the NDAA ("Related Actions") authorizes a plaintiff who had "timely commenced" a "related action" under § 1605(a)(7) to bring "any other action arising out of the same act or incident," provided "the [new] action is commenced" within 60 days from the later of "(A) the date of entry of judgment in the original action or (B) the date of the enactment of [the NDAA]."

These "transition rules," as Iraq calls them, cannot be squared with Iraq's position that the NDAA requires the dismissal of pending cases. The 60-day limit in § 1083(c)(3) implies a court could, after enactment of the NDAA, still enter judgment in an action filed under § 1605(a)(7). Iraq argues that in this context "entry of judgment" means only dismissal for want of jurisdiction rather than the entry of a judgment on the merits, but nothing in the text of § 1083 suggests the phrase has such a narrow meaning, *cf.*BLACK'S LAW DICTIONARY (8th ed.2004) (defining "judgment" to mean judgment on the merits), and the structure of the NDAA indicates precisely the opposite. New § 1605A(a)(2)(A)(i)(II) of the FSIA refers to a pending "original action" being "refiled ... by reas-

on of section 1083(c)(2)(A)" of the NDAA while referring to a new action being "filed ... by reason of section 1083(c)(3)" if a pending "related action" had been timely commenced, *see*28 U.S.C. § 1605A(b), which implies the Congress understood that the courts would retain jurisdiction over the original "related action" described in § 1083(c)(3). That explains why the 60-day period for invoking § 1083(c)(2) began with the enactment of the NDAA, *see* § 1083(c)(2)(C)(ii), whereas the 60-day period in § 1083(c)(3) may run from "the date of the entry of judgment" in the "related action," which could be well after the enactment of the NDAA.

There would be no reason for the Congress to have tied the 60-day period in § 1083(c)(3) to the date of "entry of judgment" in a case pending under § 1605(a)(7) when the NDAA became law if, as Iraq argues, the quoted words mean only a dismissal for want of jurisdiction and the Act requires the dismissal of all pending cases. The text and structure of the NDAA thus compel the conclusion that, notwithstanding the enactment of the NDAA, a court still may enter a judgment on the merits in such a case, which it could not do if it did not have jurisdiction over the case. *See, e.g., Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause"). Because new § 1605A is inapplicable, that jurisdiction over pending cases can be founded only upon former § 1605(a)(7).[FN*]

**\*6** *Section 1083(c)(4).* The final provision of § 1083(c) also is instructive. In 2003 the President acted under the Emergency Wartime Supplemental Appropriations Act of 2003 (EWSAA), Pub.L. No. 108-11, § 1503, 117 Stat. 559, 579, to "make inapplicable with respect to Iraq ... any ... provision of law that applies to countries that have supported terrorism."Presidential Determination No.2003-23, 68 Fed.Reg. 26,459 (May 7, 2003). In *Acree v. Republic of Iraq,* 370 F.3d 41 (2004), however, we held that the EWSAA did not authorize the Presid-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ent to suspend former § 1605(a)(7) with respect to Iraq. Paragraph (4) ("Preserving the Jurisdiction of the Courts") of subsection 1083(c) ("Application to Pending Cases") ratifies that holding: "Nothing in section 1503 of the [EWSAA] ... has ever authorized" the President to "mak[e] inapplicable ... any provision of [the FSIA or to] remov[e] ... the jurisdiction" of the federal courts. Thus both the text and the context of this provision make clear the Congress was intent upon "preserving" the courts' jurisdiction over "pending cases," which could only mean cases filed under former § 1605(a)(7).

*Section 1083(d)(1).* This section authorizes the President to "waive any provision of ... section [1083 of the NDAA] with respect to Iraq."If a suit against Iraq for terrorist acts could proceed only under § 1605A, as Iraq maintains, then the President could use § 1083(d)(1) to deprive the courts of jurisdiction and would have no reason ever to invoke the EWSAA; § 1083(c)(4) would be surplusage. *Cf. Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (we must "give effect ... to every clause and word of [the] statute").FN* Moreover, § 1083(d)(2)(C), which provides that the President's waiver authority applies "regardless of whether ... that authority affects any action filed before ... enactment of the [NDAA]," would be unnecessary if the Act deprived the courts of jurisdiction over pending cases.

Reading the NDAA, as we do, to leave intact jurisdiction over cases pending under former § 1605(a)(7) gives meaning both to § 1083(c)(4) and to § 1083(d) and makes sense of the relation between them. Section 1083(c)(4) clarifies that the President has no authority under the EWSAA to limit the jurisdiction of the courts over cases against Iraq. Section 1083(d)(1) then grants the President the authority to render inapplicable those provisions of the NDAA to which President Bush had objected when he vetoed the first version of the NDAA.FN*

* * *

Cognizant of the President's concerns and of the potential implications of our holding upon the foreign affairs of the United States, we do not lightly conclude the NDAA leaves intact our jurisdiction over cases, such as these, that were pending against Iraq when the Congress enacted the NDAA. Nonetheless, the NDAA fairly compels the conclusion that the plaintiffs may proceed on the basis of former § 1605(a)(7). It follows that the President's waiver of § 1083 of the NDAA with respect to Iraq affects neither the jurisdiction of the district court over cases pending under § 1605(a)(7) nor the issues presented on this appeal.FN**

B. Timeliness

*7 The jurisdictional provision upon which the plaintiffs rely contains a limitation period:

> No action shall be maintained under [§ 1605(a)(7) ] unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f) (2007). The plaintiffs contend their actions, which they filed in 2003, are timely even though the alleged torts occurred more than ten years earlier, in 1990 and 1991. They argue first that their causes of action did not arise, and the ten-year limitation therefore did not begin to run, until 1996, because they could not have sued Iraq before then. They contend alternatively that the ten-year limitation period was equitably tolled until 1996; more precisely, they argue § 1605(f) requires that we extend the period of limitation by "the period during which [Iraq] was immune from suit."We agree with their alternative argument and, accordingly, need not reach the (rather strained) argument that their claims did not arise until 1996.

[5]Section 1605(f) expressly incorporates "principles of equitable tolling." Iraq argues-and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)
(Cite as: --- F.3d ----, 2008 WL 2497417 (C.A.D.C.))

we do not disagree-the statute thereby incorporates the relevant common law. According to Iraq that means the plaintiffs are entitled only to a "reasonable" extension of the statute of limitations, *Phillips v. Heine,* 984 F.2d 489 (D.C.Cir.1993); the suits would then be untimely-assuming, as we do for the sake of the argument, the plaintiffs' causes of action arose in 1990 and 1991-because the plaintiffs have not demonstrated they reasonably required an extension to 2003, two or three years beyond the expiration of the statute of limitations, in order to bring their cases.

It seems, however, we have not applied the doctrine of equitable tolling consistently in the manner Iraq suggests. In *Phillips,* upon which Iraq relies, we held that "tolling does not bring about an automatic extension of the statute of limitations by the length of the tolling period.... It gives the plaintiff extra time *only* if he needs it,"984 F.2d at 492; that is, the plaintiff obtains a "reasonable" extension. In *United States v. Saro,* 252 F.3d 449 (2001), in contrast, we held that equitable tolling stops the clock for the duration of a tolling event. *Id.* at 454 (citing *United States v. Ibarra,* 502 U.S. 1, 4 n. 2, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991) (dictum)); *see* Calvin W. Corman, Limitation of Actions § 8.2 (1991) ("When the commencement of an action is stayed due to statutory prohibition, the period of the stay is not included in the calculation of the limitation period"); *cf. Burnett v. N.Y. Cent. R.R. Co.,* 380 U.S. 424, 434-35, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (equitable tolling, rather than giving plaintiff a "reasonable" extension of statute of limitations in FELA, stops clock for duration of tolling event).

**\*8** *Saro* and *Phillips* undoubtedly conflict, and our subsequent cases do not resolve the conflict. In *Chung v. DOJ,* upon holding the distinct doctrine of equitable estoppel (which is based upon the conduct of the defendant) did not extend the statute of limitations on the facts of that case, we left it to the district court on remand to decide, à la *Phillips,* whether the plaintiff was entitled to a "reasonable"

extension of the statute of limitations under the doctrine of equitable tolling. 333 F.3d 273, 278-80 (2003). We did not notice the conflict between *Saro* and *Phillips.*We now see not only the intra-circuit but also an inter-circuit inconsistency. Compare *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 452 (7th Cir.1991) (tolling provides a reasonable extension), with *Socop-Gonzalez v. INS,* 272 F.3d 1176, 1193-96 (9th Cir.2001) (en banc) (tolling stops the clock).

We need not resolve our home-grown conflict in this case because the statute is clear: We "include," *i.e.,* add, "the period during which [Iraq] was immune from suit"; hence cases filed in 2003 are timely.[FN*]Iraq asserts that, because we narrowly interpret the waiver of immunity by a sovereign state, *see, e.g., Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 94, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (waiver by the United States); *World Wide Minerals, Ltd. v. Republic of Kazakhstan,* 296 F.3d 1154, 1162 (D.C.Cir.2002) (waiver by foreign state), we ought strictly to interpret § 1605(f) and limit Iraq's exposure by following *Phillips.*Cases on the scope of a waiver with its consequences for the fisc are inapposite, however, for the Congress did not waive Iraq's sovereign immunity in enacting § 1605(a)(7); only the sovereign can forswear the sovereign's legal rights. In the terrorism exception the Congress qualified the statutory grant of immunity to Iraq, itself a matter of "grace and comity." *Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 486, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Iraq has pointed to no authority suggesting the Congress intended courts to read § 1605(f) any more narrowly than its terms suggest; nor are we aware of any case in which a court presumed or suggested exceptions to foreign sovereign immunity should be construed narrowly. *Cf. Saudi Arabia v. Nelson,* 507 U.S. 349, 356-58, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) (using ordinary methods of construction to interpret exception in § 1605(a)(2)).

We are therefore left to interpret the plain text of §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)
(Cite as: --- F.3d ----, 2008 WL 2497417 (C.A.D.C.))

1605(f) unencumbered by any special canons of construction, and the text makes clear Iraq's interpretation must fail. Section 1605(f) invokes the "principles of equitable tolling" and expressly requires that in "calculating [the ten-year] limitation period" we "includ[e] the period during which [Iraq] was immune from suit."To say the plaintiffs were entitled only to a reasonable term after the ten-year period ran out in 2000 or 2001 would not fulfill the mandate that we "includ[e]" the five or six years of Iraq's immunity in the calculation of the limitations period. Thus, to read the statute as Iraq insists would deprive the quoted phrases of their plain meaning.

**\*9** The Congress first amended the FSIA to add a terrorism exception in 1996, before which Iraq was "immune from suit"; hence the limitation period in § 1605(f) began to run in 1996 and expired in 2006. Accordingly, the plaintiffs timely filed their actions in 2003.

C. Political Question Doctrine

[6] Iraq asserts that the present cases are barred by the political question doctrine, for which proposition it points to several of the President's statements suggesting this action is contrary to the foreign policy of the United States.FN*We have already noted and quoted Presidential Determination 2003-23 under the EWSAA. 68 Fed.Reg. 26,459. The President also issued Executive Order 13,303 declaring that "the threat of attachment or other judicial process" against Iraqi oil interests "obstructs the orderly reconstruction of Iraq," 68 Fed.Reg. 31,931 (May 22, 2003), and sent a message to the Congress stating that he had used his authority under the EWSAA to make § 1605(a)(7) inapplicable to Iraq because the "threat of attachment or other judicial process" against Iraqi oil assets "constituted an unusual and extraordinary threat to the national security and foreign policy of the United States." 39 WEEKLY COMP. PRES. DOC.. 647, 647-48 (May 22, 2003).

In addition, Iraq points to an unenacted version of the Foreign Relations Authorization Act of 2004, see S. 925, 108th Cong. § 811 (2003), asserting that the Congress "voiced its support for the President's determination" that suits such as these are contrary to the foreign policy of the United States. The Senate Foreign Relations Committee approved that bill, but the Committee does not speak for the Congress, which last spoke to this subject when it enacted the NDAA. Therefore, we confine our analysis to the President's position that the threat of a monetary judgment against Iraq contravenes the foreign policy of the United States.

[7] The federal courts may not pass upon a question the Constitution commits to the political branches. See Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); see also id. at 211-13. In Hwang Geum Joo v. Japan, 413 F.3d 45 (D.C.Cir.2005), for instance, foreign plaintiffs alleged that Japanese soldiers had subjected them to torture and sexual slavery in violation of international law. Japan and the plaintiffs debated whether the treaties between Japan and the countries from which the plaintiffs came extinguished their claims. We held the political branches alone could resolve that dispute because it "concerns the United States only with respect to her foreign relations."Id. at 51-52.

[8] To be sure, the foreign policy considerations Iraq raises are important, as the President's actions and statements make clear. But Iraq has not explained how adjudicating the question whether Iraq committed acts of torture and hostage taking in 1990-91 requires the court to address any question the Constitution commits to the political branches. Indeed, Iraq does nothing more than assert that this action may affect the foreign relations of the United States, but that is surely not enough. Baker, 369 U.S. at 211 ("[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance"). The political question doctrine does not call upon us to decide whether a lawsuit that raises only justiciable questions

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)
**(Cite as: --- F.3d ----, 2008 WL 2497417 (C.A.D.C.))**

contravenes the foreign policy of the United States; if the political branches decide tort suits against a foreign sovereign are contrary to the foreign policy of the Nation, then they may by law remove them from our jurisdiction.

**\*10** Nor has Iraq explained how the President, by making general statements or taking actions not specific to these cases, can set to naught a duly enacted jurisdictional statute. *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 634, 637-38, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring) ("When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter. Courts can sustain exclusive Presidential control in such a case only by disabling the Congress from acting upon the subject."); *see also Altmann,* 541 U.S. at 702 (noting the FSIA "might well" require a court to defer to a statement of interest filed by the Department of State in a particular case). The Congress has given the courts of the United States the jurisdiction to decide the legal issues and factual questions raised by the plaintiffs' allegations, which sound in tort; accordingly the courts have the duty to proceed to hear the actions are justiciable. *See Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) ("It is most true, that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should"). The present actions undoubtedly present questions fit for judicial determination under Article III-to wit, whether in 1990-91 Iraq committed the torts alleged-regardless whether their resolution might affect the foreign relations of the Nation.

## III. Conclusion

In sum, we hold that neither § 1083 of the NDAA nor the President's waiver under § 1083(d) thereof deprives the courts of jurisdiction over these cases, which were pending under § 1605(a)(7) when the NDAA went into effect. Because the instant actions were timely filed and justiciable, we reverse the judgment of the district court and remand these cases to the district court for further proceedings consistent herewith.

*So ordered.*

> FN* The President had to and did find that "waiver is in the national security interest of the United States" and "will promote the reconstruction of, the consolidation of democracy in, and the relations of the United States with, Iraq," and that "Iraq continues to be a reliable ally of the United States and partner in combating acts of international terrorism."NDAA § 1083(d)(1); *see*73 Fed.Reg. at 6571 (so finding).

> FN* In consequence, only a plaintiff prosecuting an action under new § 1605A of the FSIA can claim the benefits of that section, such as prejudgment attachment of the defendant's property.

> FN* Iraq argues also that the 60-day rule authorizes the refiling of claims under § 1605A within 60 days following the date of entry of "judgment on claims involving non-sovereign parties or a different exception to sovereign immunity unaffected by Section 1083."That is clearly wrong. The 60-day period is tied to "the date of the entry of judgment in [an] original action" that was "timely commenced under section 1605(a)(7)," NDAA § 1083(c)(3); § 1605(a)(7) permits suits only against sovereign states, leaving no room for a case brought under "a different exception to sovereign immunity."

> FN* Iraq has not been designated a state sponsor of terrorism since 2004. 69 Fed.Reg. 61,702 (Oct. 20, 2004). Accordingly, even absent the President's waiver, no new action could have been filed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)
**(Cite as: --- F.3d ----, 2008 WL 2497417 (C.A.D.C.))**

against Iraq unless a prior or a related action was pending. *see* 28 U.S .C. § 1605A(a)(2)(A)(i).

FN* The President raised the same concerns when he exercised his waiver authority. 73 Fed.Reg. 6571 (discussing same non-jurisdictional implications).

FN** We have no occasion, therefore, to address the plaintiffs' alternative argument that the President left § 1605(a)(7) intact by waiving "all" provisions of § 1083 including subsection (b)(1)(A)(iii), which repeals former § 1605(a)(7).

FN* Nor need we decide whether the statute would call for the application of state rather than federal common law, whatever the latter may be, with regard to equitable tolling. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 28 U.S.C. § 1652; *see also United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966) (applying state law in interstices of federal statute).

FN* Iraq's principal argument does not assume the President's statements have the force of law. Iraq's alternative argument is that certain of those statements do have the force of law because the President was acting under the EWSAA. Our decision in *Acree,* of course, renders the latter argument beyond the reach of the panel and Iraq makes it only to preserve it for rehearing by the court *en banc.* For the same reason, we do not address Iraq's further argument that the President has waived § 1083(c)(4) of the NDAA with respect to Iraq; even if the statute were waived, the panel would still be bound by *Acree.*

C.A.D.C.,2008.
Simon v. Republic of Iraq
--- F.3d ----, 2008 WL 2497417 (C.A.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.