UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
CERTAIN UNDERWRITERS AT        )
LLOYDS LONDON, et al.,         )
                               )
          Plaintiffs,          )
                               )
     v.                        )   Civil Action No. 06-731 (GK)
                               )
GREAT SOCIALIST PEOPLE'S       )
LIBYAN ARAB JAMAHIRIYA,        )
et al.,                        )
                               )
          Defendants.          )
_____)
                               )
CERTAIN UNDERWRITERS AT        )
LLOYDS LONDON, et al.,         )
                               )
          Plaintiffs,          )
                               )
     v.                        )   Civil Action No. 08-504 (GK)
                               )
GREAT SOCIALIST PEOPLE'S       )
LIBYAN ARAB JAMAHIRIYA,        )
et al.,                        )
                               )
          Defendants.          )
_____)
```

## MEMORANDUM OPINION

In C.A. No. 06-731, Plaintiffs Certain Underwriters at Lloyds London ("Lloyds"), Allianz Cornhill Insurance, PLC; Aviation & General Insurance Company, Ltd.; English & American Insurance Company Ltd.; Markel Insurance Company Ltd.; Minster Insurance Company Ltd.; MMO/New York Marine and General; Nippon Insurance Company of Europe Ltd.; Riverstone Insurance UK Ltd.;

Sovereign Marine & General Insurance Company Ltd.; SR International Business Insurance Company Ltd.; Tower Insurance Ltd.; and La Réunion Aérienne (collectively, "Plaintiffs") bring these actions against Defendants Great Socialist People's Libyan Arab Jamahiriya; Libyan Internal Security; Libyan External Security; Mu'ammar al-Qadhafi; Abdallah al-Sanusi; Ibrahaim al-Bishari (collectively, "Libyan Defendants"); the Syrian Arab Republic; Syrian Air Force Intelligence; and Muhammed al Khuli (collectively, "Syrian Defendants"),[1] pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, et seq. (2006) (Count I); common law conversion and trespass (Counts II and III); and Aircraft Piracy under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350 (2006) (Count IV). Second Am. Compl. [C.A. No. 06-731, Dkt. No. 60].

In C.A. No. 08-504, the same Plaintiffs bring suit pursuant to the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1083, 122 Stat. 3 (2008). They claim that Defendants violated the FSIA (Count I); committed common law conversion and trespass (Counts II and III); and engaged in

---

[1] Defendants Syrian Arab Republic, Syrian Air Force Intelligence, and Muhammed al Khuli defaulted in C.A. No. 06-731 [Dkt. Nos. 21-23] and have failed to appear in C.A. No. 08-504. Hereinafter, "Defendants" refers to all Defendants except the Syrian defendants.

Aircraft Piracy under the ATCA (Count IV). Compl. [C.A. No. 08-504, Dkt. No. 1].

These cases are before the court on Defendants' Motions to Dismiss Duplicative Complaint [C.A. No. 06-731, Dkt. No. 74; C.A. No. 08-504, Dkt. No. 18] and Defendants' Supplemental Motions to Dismiss [C.A. No. 06-731, Dkt. No. 80; C.A. No. 08-504, Dkt. No. 24].

**I.   BACKGROUND**[2]

On November 23, 1985, three members of the Abu Nidal Organization[3] ("ANO") hijacked Egypt Air Flight 648, traveling from Athens, Greece to Cairo, Egypt. At that time, the governments of Libya and Syria sponsored ANO by providing a variety of monetary, material, diplomatic, and logistical support.

Shortly after takeoff, the plane made an emergency landing at the Malta International Airport, where it remained for twenty-

---

[2]   For purposes of ruling on a motion to dismiss, the factual allegations of the Complaint must be presumed to be true and liberally construed in favor of the Plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008). Therefore, the facts set forth herein are taken from Plaintiff's Complaint unless otherwise noted.

[3]   The ANO is also known as Black September, the Fatah Revolutionary Council, the Arab Revolutionary Council, the Arab Revolutionary Brigades, and the Revolutionary Organization of Socialist Muslims.

four hours until Egyptian Commandos attempted to board it.  The combination of gunfire by the ANO members, a fire started by the Egyptian Commandos' explosives, and the ANO members' deployment of hand grenades rendered the plane "damaged beyond repair" and unfit "for any purpose whatsoever."  Compl. ¶ 51 [C.A. No. 08-504].

Plaintiffs, which are both foreign and United States national juridical entities, provided liability insurance for the hull of the plane.  Following the hijacking, they "compensated" Egypt Air "for the cost of the destroyed airplane."  Id. ¶ 64.

On April 21, 2006, Plaintiffs filed a Complaint in this Court against the Libyan and Syrian Defendants.  The original Complaint alleged Conversion (Count I), Trespass (Count II), and Aircraft Piracy (Count III).  On November 9, 2006, Plaintiffs filed an Amended Complaint adding an additional allegation of International Terrorism in Violation of 18 U.S.C. § 2333 (Count IV) [Dkt. No. 26].

On December 5, 2006, Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (5), and (6) [Dkt. No. 32].  On June 12, 2007, this Court held a Motions Hearing.  On July 9, 2007, it granted Defendants' Motion to Dismiss for lack of subject matter jurisdiction [Dkt. Nos. 45-

46]. Plaintiffs filed an appeal on August 3, 2007, and on February 1, 2008, our Court of Appeals ruled that it lacked jurisdiction to consider the appeal. Consequently, it ordered that the Motion to Dismiss be granted. See Certain Underwriters at Lloyd's of London v. Great Socialist People's Libyan Arab Jamahiriya, No. 07-7117 (D.C. Cir. Dec. 14, 2007) [Dkt. No. 61].

On February 22, 2008, Plaintiffs filed a Motion for Reconsideration [Dkt. No. 51] and a Motion for Leave to File a Second Amended Complaint [Dkt. No. 52]. On March 28, 2008, the Motion for Leave was granted and Plaintiffs filed their Second Amended Complaint the same day [Dkt. No. 60]. The Second Amended Complaint alleges a violation of 28 U.S.C. § 1605A(d) (Count I), Conversion (Count II), Trespass (Count III), and Aircraft Piracy (Count IV), seeking a sum in excess of $40 million on each count. On April 14, 2008, the Court denied Plaintiffs' Motion for Reconsideration without prejudice [Dkt. No. 64].

On March 24, 2008, Plaintiffs filed a second Complaint against the same Defendants,[4] alleging a violation of 28 U.S.C. §

---

[4] Plaintiffs also filed a Notice of Related Cases on April 21, 2006 [C.A. No. 06-731, Dkt. No. 2]. In it, they indicated that another case, Baker, et al. v. Libya, et al., C.A. No. 03-749, "relate[d] to common property; involve[d] common issues of fact;" and "[grew] out of the same event or transaction." Notice of Related Cases at 1.

1605A(d) (Count I), Conversion (Count II), Trespass (Count III), and Aircraft Piracy (Count IV), seeking a sum in excess of $40 million on each count [C.A. No. 08-504, Dkt. No. 1]. On July 25, 2008, Plaintiffs filed a Motion to Consolidate Cases [C.A. No. 08-504, Dkt. No. 17], and Defendants filed Motions to Dismiss Duplicative Complaint [C.A. No. 06-731, Dkt. No. 74; C.A. No. 08-504, Dkt. No. 18].

On November 20, 2008, Defendants filed Supplemental Motions to Dismiss [C.A. No. 06-731, Dkt. No. 80; C.A. No. 08-504, Dkt. No. 24]. On March 16, 2009, the United States filed a Statement of Interest in each case [C.A. No. 06-731, Dkt. No. 84; C.A. No. 08-504, Dkt. No. 28].

On July 10, 2009, the two cases--06-731 and 08-504--were consolidated. [C.A. No. 06-731, Dkt. No. 92; C.A. No. 08-504, Dkt. No. 36].

## II.  STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it

may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 579.

Under the standard set out in Twombly, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success . . . must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21.November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

## III. ANALYSIS

On August 4, 2008, the Libyan Claims Resolution Act ("LCRA") was signed into law in order to "provide for 'fair compensation to all nationals of the United States who have terrorism-related claims against Libya through a comprehensive settlement of claims by such nationals.'" Statement of Interest of the United States at 4-5 (quoting Pub. L. No. 110-301, § 3, 122 Stat. 2999 (2008)). The statute states that

> section 1605A(c) of title 28, United States Code, section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008 . . . and any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Libya, or any of its agencies, instrumentalities, officials,

>employees, or agents in any action in a Federal or State court.

Pub. L. No. 110-301, § 5(a)(1)(B). The Act provides Libya with immunity that applies to suits brought in the United States by plaintiffs of any nationality.[5] Id. at § 5(a)(1).

On August 14, 2008, shortly after the passage of the LCRA, Libya and the United States signed the Claims Settlement Agreement ("Settlement Agreement") in order to "terminate permanently all pending suits . . . [and] preclude any future suits" in United States or Libyan courts arising from terrorist acts, including aircraft hijacking and hostage-taking, which occurred prior to June 30, 2006. Claims Settlement Agreement Between the United States of America and the Great Socialist People's Libyan Arab Jamahiriya, art. I, August 14, 2008. After the United States Government received $1.5 billion in settlement funds, President Bush signed an Executive Order stating that "[a]ll claims within the terms of Article I of the Claims Settlement Agreement . . . are settled." Exec. Order No. 13,477, § 1 (2008).

---

[5]   The LCRA states that "Libya, an agency or instrumentality of Libya, and the property of Libya or an agency or instrumentality of Libya, shall not be subject to the exceptions to immunity from jurisdiction, liens, attachment, and execution contained in section 1605A, 1605(a)(7), or 1610 . . . of Title 28, United States Code." Pub. L. No. 110-301, § 5(a)(1)(A).

The Order declares that "[n]o United States national may assert or maintain any claim within the terms of Article I in any forum" outside the provisions of the Settlement Agreement and that "[a]ny pending suit in any court . . . by United States nationals . . . coming within the terms of Article I shall be terminated." Id. § 1(a)(i-ii). With regard to foreign nationals, the Order states that "[n]o foreign national may assert or maintain any claim coming within the terms of Article I in any court in the United States," and "[a]ny pending suit in any court in the United States by foreign nationals . . . coming within the terms of Article I shall be terminated."[6] Id. § 1(b)(i-ii).

In the federal system, the FSIA is the "sole basis for obtaining jurisdiction over a foreign state." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989). See also Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 486 (1983) ("[I]f none of the exceptions to sovereign immunity set forth in the [FSIA] applies, the District Court lacks both statutory subject matter jurisdiction and personal jurisdiction"). While Plaintiffs rightly point out that, under

---

[6] The Order does permit foreign nationals "to pursue other available remedies for claims coming within the terms of Article I in foreign courts or through the efforts of foreign governments." Exec. Order No. 13,477, § 1(b)(iii).

28 U.S.C. § 1605A(c), the January 2008 amendments to the FSIA provide a new federal cause of action against nations that sponsor terrorism, the LCRA explicitly overrides § 1605A(c) and restores immunity to Libya pursuant to the Settlement Agreement.[7]

Principles of statutory interpretation establish that "a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." Morton v. Mancari, 417 U.S. 535, 550-51 (1974). That principle is applicable to this case where the explicit language of the LCRA negates a general provision of the FSIA.[8]

Plaintiffs concede that their claims fall within Article I of the Settlement Agreement [C.A. No. 06-731, Dkt. No. 81; C.A. No. 08-504, Dkt. No. 25]. Pls.' Opp'ns ¶ 6. Furthermore, Defendants all fall within the class for which the LCRA provides immunity--the Libyan government, its agencies (Internal and

---

[7] As quoted, supra, "section 1605A(c) of title 28, United States Code . . . and any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Libya, or any of its agencies, instrumentalities, officials, employees, or agents in any action in a Federal or State court." Pub. L. 110-301, § 5(a)(1)(B).

[8] Retroactivity is not at issue in this case because Congress has made clear its intent to apply the provisions of the LCRA to events prior to June 30, 2006. See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (requiring deference to Congressional intent with respect to statutes' retroactive application).

External Security), and its officials, employees, or agents (al-Qadhafi, al-Sanusi, and al-Bishari).

Because the LCRA, Settlement Agreement, and Executive Order specifically and comprehensively withdraw any exception to sovereign immunity that may be provided in the FSIA with regard to Defendants' pre-2006 support of terrorist acts, this Court lacks subject matter jurisdiction over the Libyan Defendants.[9] See Verlinden B.V., 461 U.S. at 485 n.5.

Plaintiffs nevertheless "suggest" that the Court retain jurisdiction over the case until it is clear that an alternate forum can provide relief for their claims. Pls.' Statement of Position at 3 [C.A. No. 08-504, Dkt. No. 33]. The Court cannot comply with Plaintiffs' wish: the jurisdictional issue is dispositive. See Antolok v. United States, 873 F.2d 369, 375 (D.C. Cir. 1989) ("Congress has deprived the courts of the United States of jurisdiction over these claims. . . . That is the end of the matter.").

---

[9] Because the Court lacks jurisdiction, there is no need to analyze the allegedly duplicative nature of Plaintiffs' Complaint in C.A. No. 08-504.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motions to Dismiss are **granted** with respect to the Libyan Defendants.[10]  An Order shall accompany this Memorandum Opinion.

January 6, 2010

/s/
Gladys Kessler
United States District Judge

**Copies to:** Attorneys of record via ECF

---

[10] Plaintiffs raise several additional contentions alleging that the provisions under the LCRA and Settlement Agreement are insufficient to address their claims.  However, the lack of subject matter jurisdiction and personal jurisdiction is dispositive in this case.  See Antolok, 873 F.2d at 375.